**TEXAS STATE BANK, Petitioner,**

v.

**Rutilo Vargas AMARO, Respondent.**

No. 00–1220.

Supreme Court of Texas.

Argued Oct. 3, 2001.

Decided Sept. 26, 2002.

Lisa Powell, Gary Gurwitz, Sofia Amabel Ramon, Atlas & Hall, McAllen, for petitioner.

Benjamin L. Hall, III, Elizabeth B. Hawkins, Hall Law Firm, Russell S. Post, Hogan Dubose & Townsend, Jennifer Bruch Hogan, Hogan Dubose & Townsend, L.L.P., John K. Leach, O'Quinn Laminack & Pirtle, Houston, for respondent.

Justice RODRIGUEZ delivered the opinion of the Court.

We overrule Texas State Bank's and Rutilo Vargas Amaro's motions for rehearing. We withdraw our opinion of June 6, 2002, and substitute the following in its place.

In this appeal from a modification of a district court's order, Texas State Bank (TSB) asks this Court to reinstate those parts of the district court's order the court of appeals reversed. The issues here are whether the district court had continuing jurisdiction over a trust it created under Chapter 142 of the Texas Trust Code, and whether the district court's order went beyond the relief TSB's motion requested. Because the district court did have continuing jurisdiction over the trust but the district court's judgment exceeded the relief TSB's motion requested, we reinstate only a part of the order and affirm the court of appeals' judgment, as modified.

## I.

Rutilo Vargas Amaro (Vargas)[1] suffered severe injuries in a sugarcane field burn-off. He sued the field's owners, Rio Grande Valley Sugar Growers, Inc. (Sugar Growers), for negligence in the 206th district court and received a substantial settlement. In 1989, the district court adjudged Vargas incapacitated as defined by section 142.007 of the Texas Property Code, and, on Vargas's guardian's motion, the court created a trust for him under section 142.005 of the Code. The trust document provided that the trust would terminate when Vargas regained capacity, and the district court's decree stated that the trust would "take effect immediately to remain in full force and effect until further orders of this Court." TSB served as trustee during the trust's nine-year existence.

In May 1997, Vargas filed a "Motion for Termination of Trust" in the 206th district court, alleging that he had regained capacity. In September 1997, before the 206th district court had ruled on Vargas's motion, the 370th District Court of Hidalgo County issued an order in Vargas's uncontested divorce action decreeing that Vargas was fully capable of acting as sole managing conservator for his minor child and suffered no incapacity. Five days after the 370th district court issued its order, Vargas filed a motion with the 206th district court to withdraw his request to terminate the trust and, the following day, he filed a notice of nonsuit in the 206th district court. Vargas then sent a letter to TSB, demanding that TSB release the trust funds due to the divorce court's adjudication of his regained capacity. In the letter, Vargas threatened TSB with legal action if TSB did not promptly comply with the request.

TSB responded by tendering the trust funds to the 206th district court and filing a "Motion Regarding the Rutilo Vargas Amaro Trust for Declaratory Judgment and for Other Relief" under the caption of the original personal-injury suit between Vargas and Sugar Growers. In this motion, filed September 18, 1997, TSB asked the court: (1) to determine if the trust was terminated because of Vargas's regained

---

1. The court of appeals referred to Rutilo Vargas Amaro as "Vargas." For the sake of consistency, we do the same.

capacity; (2) to allow TSB to resign as trustee and to appoint a substitute trustee in case the trust was not terminated; (3) to "approve final accountings to be submitted to the Court;" and (4) to order any "other and further relief, at law or in equity, to which TSB may be justly entitled." TSB alleged jurisdiction under Chapter 142 of the Texas Property Code, the Texas Uniform Declaratory Judgments Act,[2] and section 115.001 of the Texas Trust Code.[3]

On October 6, Vargas filed a plea to the jurisdiction arguing that the 206th district court did not have continuing jurisdiction over the trust, and that the 370th district court had jurisdiction to determine Vargas's capacity. At the same time, he filed a "Notice of Determination of Capacity" with the 206th district court, informing the court that the 370th district court had found capacity. Vargas argued that the trust had terminated by its own terms when the 370th district court ruled that Vargas was not incapacitated.

Vargas then filed a new suit against TSB in the 93rd District Court, also in Hidalgo County. This suit alleged that TSB had committed fraud, breach of fiduciary duty, negligence, breach of the duty of good faith and fair dealing, breach of contract, and DTPA violations in administering the trust. Some of TSB's alleged misconduct, according to Vargas, had to do with improper and imprudent investment decisions, failing to keep Vargas fully informed of trust decisions, and failing to keep proper records regarding the trust. This suit is still pending and discovery is proceeding.

On November 25, 1997, the 206th district court denied Vargas's plea to the jurisdiction and claimed jurisdiction "to any matter pertaining to the assets of Mr. Rutilo Vargas as it relates to matters of his Trust." On February 26, 1998, Vargas filed a "Supplemental Notice of Determination of Capacity and Request for Release of Monies Owed to Rutilo Vargas Amaro" and scheduled a hearing for March 11, 1998. Through a letter to the court coordinator, sent six days before the hearing date, TSB gave notice that it was also scheduling a hearing on its "Motion Regarding the Rutilo Vargas Amaro Trust for Declaratory Judgment and for Other Relief." Vargas objected to TSB's request to have the 206th district court "make final legal determinations," arguing that the notice requirements of Texas Rule of Civil Procedure 245 were not met.

The 206th district court held hearings on both parties' motions and, on March 17, issued an "Order Terminating Trust, Approving Trust Administration, Investment Philosophy, Accounting, Actions and Fees, and Discharging Trustee Relating to the Rutilo Vargas Amaro Trust." In this order, the court terminated the trust due to Vargas's regained capacity and approved all accountings TSB presented, including all distributions TSB made, all fees TSB received, and all fees, costs, and expenses TSB paid. In addition, the court approved TSB's investment philosophy and ordered that "[s]ubject to the payment to Vargas ... as directed above, the Court discharges TSB as trustee and releases TSB as trustee from any liability to the Trust or to Vargas."

Vargas appealed, complaining that the 206th district court erred in absolving TSB

---

2.  TEX. CIV. PRAC. & REM.CODE § 37.005.

3.  TEX. PROP.CODE § 115.001 (providing for the original and exclusive jurisdiction of a district court "over all proceedings concerning trusts, including proceedings to: ... (4) determine the powers, responsibilities, duties, and liability of a trustee").

of liability for its handling of the trust. Vargas argued that the Declaratory Judgments Act could not expand the district court's jurisdiction over the trust to allow it to adjudicate Vargas's tort claims against TSB. The court of appeals agreed, and modified the district court's judgment by reversing those parts of the district court's order: (1) approving all distributions, fees, costs, and expenses TSB paid, except for the fees, costs, and expenses relating to the trust's termination; (2) approving TSB's investment philosophy; and (3) absolving TSB from any liability to Vargas or the Vargas trust. 28 S.W.3d at 796.

TSB filed a petition for review, asking this Court to resolve four issues: 1) Did the 206th district court exercise continuing jurisdiction over the Chapter 142 trust that it created, and thus have jurisdiction to issue its declaratory judgment in connection with the trust, related issues, and parties? 2) Did the 206th district court have jurisdiction to and properly approve the investment philosophy, distributions, and expenses of the trustee of the Vargas trust, to discharge the trustee from liability, and to issue its declaratory relief? 3) Did Vargas waive his argument concerning the proper scope of declaratory relief by failing to make the argument to the district court? and, 4) Did Vargas waive his arguments by accepting payment under the judgment?

Vargas counters by asking this Court to consider cross-points that would preclude reinstatement of those parts of the 206th district court's judgment reversed by the court of appeals. Specifically, Vargas urges that the district court erred in rendering judgment for TSB when Vargas was not given the required forty-five days notice of trial under Rule 245 of the Texas Rules of Civil Procedure, and, alternatively, the district court erred in rendering judgment for TSB even though Vargas was denied his right to a jury trial.

## II.

■ We first consider the district court's jurisdiction over a trust created under Texas Property Code section 142.005. By filing a motion under the caption of the original *Sugar Growers* personal-injury suit, TSB invoked the 206th district court's continuing jurisdiction over the trust created in that suit. TSB's motion specifically requested the 206th district court to determine whether the trust was terminated due to Vargas's regained capacity, to allow TSB to resign if the trust was not terminated, and to approve TSB's final accounting of the trust.

Chapter 142 provides that the trust will continue until terminated or revoked, and allows the court to amend, modify, or revoke the trust at any time before its termination. TEX. PROP.CODE § 142.005(d),(f). The 206th district court's decree creating the trust stated that the trust would "take effect immediately to remain in full force and effect until further orders of this court." And the trust document itself provides that the "Court shall retain the right at any time before the termination of this trust to amend, alter, modify, or revoke this trust." Taken together, these documents invoke the 206th district court's continuing jurisdiction over the trust under Chapter 142. Therefore, the 206th district court had continuing jurisdiction over the Vargas trust until such time that it terminated the trust. Thus, although the 370th district court adjudicated Vargas's capacity in the divorce action, the 206th had jurisdiction to consider whether he regained capacity such that the trust was terminated, and the trust did not terminate until the 206th so decreed.

## III.

■ Having determined that the 206th district court had continuing jurisdiction to determine issues related to the trust and its termination, we now consider whether the court properly exercised that jurisdiction by ordering the relief that it did. As noted, the district court has continuing jurisdiction to supervise, modify, revoke, and terminate the trust. Further, section 142.005(b)(4) provides that the trust terminates when the beneficiary regains capacity and section 142.005(e) provides that upon the trust's termination the principal and undistributed income shall be paid to the beneficiary. In this case, neither capacity nor the district court's order terminating the trust are disputed. The question here is whether the remainder of the district court's order—specifically, approval of TSB's accounting, approval of TSB's investment philosophy, and absolving TSB of liability—was properly granted.

To determine the corpus due to the beneficiary, the trustee may provide the terminating court with a final accounting of the trust funds for examination. In its motion to the 206th district court, TSB asked the court to "approve final accountings to be submitted to the Court." Property Code section 113.152 provides what an accounting should contain.

A written statement of accounts shall show:

(1) all trust property that has come to the trustee's knowledge or into the trustee's possession and that has not been previously listed or inventoried as property of the trust;

(2) a complete account of receipts, disbursements, and other transactions regarding the trust property for the period covered by the account, including their source and nature, with receipts of principal and income shown separately;

(3) a listing of all property being administered, with an adequate description of each asset;

(4) the cash balance on hand and the name and location of the depository where the balance is kept; and

(5) all known liabilities owed by the trust.

TEX. PROP.CODE § 113.152. In the context of a terminating trust, the statutory requirements for an accounting form the basis winding up the trust to ascertain the balance due to the beneficiary. Nowhere does section 113.152 mention investment philosophy or potential tort liability to the beneficiary with regard to an accounting. Thus, these determinations are not components of an accounting. Accordingly, although the 206th district court's approving TSB's accounting was appropriate under TSB's motion to the court, the 206th district court's approving TSB's investment philosophy and absolving TSB's tort liability, if any, were not. The 206th district court improperly granted relief that TSB did not request. TSB's motion asked the district court only to determine whether the trust was terminated, to remove TSB as trustee if the trust was not terminated, and to approve TSB's final accounting. In its motion, TSB did not ask the district court to adjudicate TSB's potential tort liability as trustee, nor to approve TSB's investment philosophy, and therefore the district court should not have ruled on these issues. We conclude that the court of appeals was correct in reversing those parts of the district court's order.

## IV.

■ The court of appeals further modified the district court's order by reversing that part of the order approving all distributions, fees, costs, and expenses TSB paid from the Vargas trust except those relating to the trust's termination. But Chapter 142 of the Property Code gives

the court of continuing jurisdiction the power to approve the trustee's fees, TEX. PROP.CODE § 142.005(b)(6), and the trust instrument also provided that "[t]he trustee shall receive reasonable compensation . . . on application to and approval of the 206th District Court." And because the distributions, costs, and expenses of a trust would be "disbursements" under Property Code section 113.152(2), and therefore properly part of the trustee's accounting, we hold that the court of appeals erred by reversing that part of the district court's order. Accordingly, we reinstate that part.

## V.

■ TSB argues that Vargas waived his objections to the proper scope of the declaratory relief the district court granted by failing to make the argument to the district court. We disagree. The error is that the district court's order exceeded the relief TSB's motion requested. Vargas objected at the March hearing to the introduction and consideration of evidence that went beyond TSB's request for relief. And, Vargas's brief to the court of appeals clearly objected to the fact that the district court went far beyond the scope of TSB's motion in its final order. Vargas properly preserved his objections.

## VI.

■ Finally, TSB argues that Vargas waived his objection to the district court's judgment by accepting payment of his trust monies under that judgment. This Court, in Carle v. Carle, stated that a "litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom." 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950). There is a narrow exception to this rule that as long as an appellant "accepts only that which appellee concedes, or is bound to concede, to be due him under the judgment he is not estopped to prosecute an appeal which involves only his right to a further recovery." Id.

Here, neither side disputes that capacity was regained and that the trust should have been terminated. And neither party argues with winding up the trust and distributing the corpus. Vargas contested only the district court's ability to rule on TSB's potential tort liability to Vargas as trustee. Therefore, Vargas's acceptance of the trust corpus is not inconsistent with his position and falls within the Carle exception.

## VII.

Because we reinstate the trial court's judgment approving the accounting, including the approval of distributions, fees, costs, and expenses, we next consider Vargas's alternative grounds for affirming the court of appeals' judgment reversing these rulings. Vargas argues that judgment cannot be rendered on these issues because he was not given the forty-five days notice of trial required under Rule 245 of the Texas Rules of Civil Procedure. Vargas also argues that the 206th district court erred in rendering judgment for TSB because it denied him the right to a jury trial.

■ As we stated above, the trustee may provide the court with a final accounting of the trust funds to determine the amount due to the beneficiary, and we held that the court's approval of the accounting was within its jurisdiction and within the scope of relief requested by TSB's motion. To properly assess Vargas's argument that the ruling violates his due process rights, we must determine the nature of the trial court's ruling. TSB contends that "[a]pproval of an 'accounting' involves more than merely approval of

the math involved in expenditure and disbursement: approval of an accounting disposes of all claims that might be made in regard to matters relating thereto." For support, TSB cites only one case—*Coble Wall Trust Co., Inc. v. Palmer,* 859 S.W.2d 475, 480–81 (Tex.App.-San Antonio 1993, writ denied). In that case, the court of appeals held that a probate court's judgment, after a full hearing based on the new administrators' and others' objections, that approved the final accounts and discharged Coble Wall from all liability barred the plaintiff's subsequent suit for negligence and DTPA violations. In that case, full evidentiary hearings were conducted and the court of appeals noted that all of the contentions advanced by the plaintiffs regarding the estate plan and fees were heard by the probate court and thus were placed in issue and adjudicated. Thus, the guardian's liability had been fully litigated in the probate court. *Coble Wall* does not hold that a court's approval of an accounting necessarily includes adjudication of the trustee's tort liability; it merely affirms that, in certain circumstances, it may.[4]

■ Contrary to TSB's assertion, the Trust Code does not contemplate that an accounting will settle the trustee's tort liability. As noted, section 113.152 establishes the contents of an accounting and requires the trustee to list trust property, transactions, property, cash, and all known liabilities owed by the trust. It simply does not reach the trustee's tort liability. This conclusion is supported by the Trust Code's structure, which includes Subchapter E "Accounting by Trustee" within Chapter 113, entitled "Administration."

In contrast, Chapter 114 concerns "liabilities, rights, and remedies of trustees, beneficiaries, and third persons." Thus, the final accounting "form[s] the basis for a winding up of the trust to ascertain the balance due to the beneficiary." *Supra* at 543. As TSB states in its brief, "TSB's requested relief in essence provided for determination of what amounts should be paid to Vargas by TSB and the closing of the trust and issues relating thereto." Determining TSB's tort liability is not necessary to the closing of the trust or ascertaining the trust balance due the beneficiary, and, as we held above, was not within the scope of TSB's requested relief. Accordingly, because approving the accounting, including the distributions, costs, and expenses, was not an adjudication of TSB's tort liabilities, Vargas was not entitled to a jury or to forty-five days notice of the hearing.

## VIII.

In sum, we conclude that under Property Code section 142.005 and the trust documents, the district court had continuing jurisdiction to rule on the issues requested by TSB's motion; specifically, the 206th district court had jurisdiction in this case to terminate the trust and to approve TSB's final accounting, including all distributions, fees, costs, and expenses of the trust. We hold that the 206th district court's order exceeded, in part, the relief TSB requested and should not have encompassed approving TSB's investment philosophy, nor ruling on TSB's potential tort liability to Vargas. We modify the court of appeal's judgment by reinstating that part of the 206th district court's order approving the distributions, fees, costs,

4. In *Bohlssen v. Bohlssen,* 56 S.W.2d 913, 916 (Tex.Civ.App.-Galveston 1932, no writ), upon which the court in *Coble Wall* relied, the probate court not only approved the final accounting and discharged the guardian, but the ward expressly released the guardian from any further liability to him and acknowledged that he would not thereafter "have [a] claim against his guardian."

**546**

and expenses TSB paid from the Vargas Trust. Accordingly, we affirm the court of appeal's judgment, as modified.

Justice SCHNEIDER did not participate in the decision.