Opinion issued April 19, 2007









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00912-CV






THELMA JEAN DADE, Appellant


V.


JOHNNY DADE, Appellee






On Appeal from the 387th District Court

Fort Bend County, Texas

Trial Court Cause No. 01-CV-121087






MEMORANDUM OPINION


 This case involves the dispersal of funds following a divorce and qualified
domestic relations order ("QDRO"). Appellee, Johnny Dade ("Johnny"), filed a
motion for temporary injunction and for turnover of assets, and the trial court ordered
that appellant, Thelma Jean Dade ("Thelma"), pay Johnny $83,402.95. In six issues,
Thelma argues that (1) the trial court's order requires removal of funds that have
already been withdrawn; (2) the trial court abused its discretion "by rendering a
judgment in violation of the acceptance-of-benefits doctrine"; (3) the trial court
abused its discretion by granting turnover relief that altered the substantive rights of
the parties; (4) the trial court issued a turnover order against Thelma who is not a
judgment debtor; (5) the trial court abused its discretion by granting turnover relief,
which is not a remedy available for divorce; and (6) there was cumulative error. 

 We affirm. 

 Background


 On February 28, 2003, the trial court signed a Final Decree of Divorce. The
court also signed a QDRO that provided that Johnny was to receive a portion of
Thelma's retirement benefits in the Southwestern Bell ("SBC") pension plan, "that
portion being the sum of $116,334.49 of the immediate lump sum benefit and more
particularly defined in a [QDRO]." The QDRO reflected the awarded dollar amount
and specified that the QDRO "shall apply to the SBC Pension Benefit Plan -
Nonbargained Program and the SBC Pension Benefit Plan - Bargained Plan
Combination Benefit." (1) It is undisputed that this original QDRO comported with the
trial court's ruling in the underlying divorce suit.

 SBC did not accept the QDRO because SBC only allows a beneficiary to
submit a percentage amount, rather than a lump sum. The parties drafted a second
QDRO, which granted to Johnny 37.95% of the "Bargained Plan" accrued as of
December 31, 2000. As drafted, the second QDRO was inconsistent with the trial
court's ruling as to the applicable plans and the date of accrual. Johnny, initially
unaware of the inconsistency, submitted the QDRO to SBC in December 2003 and
received $32,981.54 in February 2004. The parties returned to the trial court several
times as Johnny attempted to enter an amended QDRO that complied with the court's
order in the original divorce decree. 

 Johnny discovered that Thelma had retired from SBC on January 15, 2005,
taking a full withdrawal of her pension funds, and he abandoned attempts to correct
the QDRO (2) and filed a motion for turnover of assets. At the hearing, the trial court
heard testimony and, without determining fault, found that Johnny had received only
$32,981.54 of the $116,334,49 awarded by the divorce decree and awarded Johnny
a judgment against Thelma in the amount of $83,402.95 plus interest. Thelma
appeals. 

Enforcement of Property Division

 The Texas Legislature confers upon the trial court wide discretion in the
enforcement of property divisions subsequent to a decree of divorce. See Tex. Fam.
Code Ann. § 9.001 (Vernon 1998). Specifically, "the court may render further orders
to enforce the division of property made in the decree of divorce . . . to assist in the
implementation of . . . the prior order." Tex. Fam. Code Ann. § 9.006(a) (Vernon
1998). "If a party did not receive payments of money as awarded in the decree of
divorce . . . , the court may render judgment against a defaulting party for the amount
of unpaid payments to which the party is entitled." Tex. Fam. Code Ann. § 9.010(b)
(Vernon 1998). The Texas Family Code specifically states a "remedy of a reduction
to money judgment is in addition to the other remedies provided by law," evidencing
the trial court's wide discretion in such enforcement. Tex. Fam. Code Ann. §
9.010(c) (Vernon 1998) (emphasis added). 

Turnover Order

 In points of error one, three, four, and five, Thelma argues that (1) the trial
court's order requires removal of funds that have already been withdrawn; (2) the trial
court abused its discretion by granting turnover relief that altered the substantive
rights of the parties; (3) the trial court issued a turnover order against Thelma, who
is not a judgment debtor; and (4) the trial court abused its discretion by granting
turnover relief, which is not a remedy available for divorce.

Standard of Review

 We review the trial court's order for an abuse of discretion. Beck v. Walker,
154 S.W.3d 895, 901 (Tex. App.--Dallas 2005, no pet.); see also Att'y Gen. of Tex.
v. Stevens, 84 S.W.3d 720, 722 (Tex. App.--Houston [1st Dist.] 2002, no pet.)
(applying abuse of discretion standard of review where trial court reduced unpaid
child support order to money judgment). It is an abuse of discretion for a trial court
to rule arbitrarily, unreasonably, or without regard to guiding legal principles, or to
rule without supporting evidence. Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex.
1998). 

Analysis

 The turnover statute provides that a "court may [] order the judgment debtor
to turn over nonexempt property that is in the debtor's possession or is subject to the
debtor's control . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b)(1) (Vernon
1997). Thelma presumes that the trial court ruled pursuant to the turnover statute. 
Thelma's presumption is not supported by the record. The trial court possesses wide
discretion in the enforcement of property division subsequent to a divorce decree and
may render a judgment for unpaid payments to which a party is entitled. See Tex.
Fam. Code Ann. §§ 9.006, 9.010. We hold that the trial court acted pursuant to
Texas Family Code section 9.010. 

 The trial court heard testimony regarding the pension benefits received by
Johnny and those allegedly still owed to Johnny. Johnny testified that, on the date of
divorce, if Thelma chose to retire, she would receive 100 percent of the pension
value. Thelma agreed and further acknowledged that she took a full and total
distribution from her pension plan during the pendency of the QDRO amendment
proceedings. The trial court stated that Thelma's receipt of the pension funds renders
further attempts to correct and amend the QDRO moot as the fund balance is now
zero. During the hearing, the following exchange occurred between the trial court
and the attorneys:

 Court: Well, in view of the fact that now both sides are telling me that
there's no money in the QDRO, there's no point in me talking to
Southwestern Bell.


 Thelma's Counsel: Well, Your Honor, I think the point was just to be
sure the Court - that Mr. Dade has been paid according to this
Court's ruling.


 Court: No. Actually, I think Mr. Dade [sic] been paid according to the
QDRO; isn't that right?


 Johnny's Counsel: That's correct.


 Court: What is the purpose of a QDRO, qualified domestic relations
[order] - [Thelma's Counsel], I'm going to ask you the same
question, what the purpose of a qualified domestic relation [order]
- 


 Johnny's Counsel: It's to effectuate the Court's division of retirement
benefits.


 Court: Do you agree with that?


 Thelma's Counsel: I agree with that.


 Court: Okay. Then this gentlemen was awarded one hundred sixteen
thousand dollars. He's gotten part of it. He's entitled to the rest
of it.


 . . .

 

 The QDRO is just a vehicle. The vehicle is not the order; the man
was awarded $116,000.00 and some change. And he has not
gotten all of it. Without faulting anybody, he's entitled to some
more money. 


Thelma's counsel argued that Johnny did not have "clean hands" because he "made
the choice to pull [the] monies out early." The trial court responded, "There's nothing
in the decree that says that." The trial court concluded that "it really doesn't make
any difference what the man did." 

 The recital of the judgment at the hearing stated, "This Court awards Mr. Dade
a judgment against Miss Dade in the amount of $83,402.95, to bear interest from
today's date until paid." The subsequent written order, signed by the trial court on
August 18, 2005, contains the same language. Neither at the hearing nor in the order
was there mention of a turnover order pursuant to section 31.002 of the Civil Practice
and Remedies Code. The trial court's order did not impose an obligation where no
such obligation previously existed. See McGehee v. Epley, 661 S.W.2d 924, 925-26
(Tex. 1983). Although a court is without authority to change provisions in a final
judgment relating to property adjudication, it does have authority to make orders
necessary to carry the judgment into full effect. Tex. Fam. Code Ann. § 9.001; see
McGehee, 661 S.W.2d at 925-26. The subsequent order must be consistent with the
provisions and finality of the judgment. McGehee, 661 S.W.2d at 925-26. 

 We hold that the trial court, after considering the evidence that Johnny had not
received the pension benefits as awarded by the divorce decree and that Thelma now
had possession of those funds, acted within its discretion pursuant to Texas Family
Code section 9.010 in entering a money judgment against Thelma. 

 We overrule points of error one, three, four, and five.

 Acceptance-of-Benefits


 In point of error two, Thelma argues that the trial court abused its discretion
"by rendering a judgment in violation of the acceptance-of-benefits doctrine."

 The acceptance-of-benefits doctrine provides that a litigant cannot accept the
benefits of a judgment and then ask a court to rule that the judgment was insufficient. 
Tex. State Bank v. Vargas, 87 S.W.3d 538, 544 (Tex. 2002). "There is a narrow
exception to this rule that as long as an appellant accepts only that which appellee
concedes, or is bound to concede, to be due him under the judgment he is not
estopped to prosecute an appeal which involved only his right to a further recovery." 
Id. (internal quotations omitted). 

 To invoke the acceptance-of-benefits doctrine, a party must demonstrate that
the other has accepted the benefits of the judgment and then complained of the
insufficiency of that judgment. Id. Both parties agreed that a QDRO's purpose is to
effectuate the Court's division of retirement benefits. See Reiss v. Reiss, 118 S.W.3d
439, 442 (Tex. 2003). Thelma argues that Johnny accepted the benefits of the QDRO
and is effectively estopped from challenging its sufficiency. We disagree. The
underlying judgment is the division of property ordered by the divorce decree, not the
incorrectly drafted QDRO. Johnny does not challenge the trial court's division of
property; he argues only that the trial court's order was not correctly administered
through the QDRO.

 Thelma further argues that the divorce decree awarded Johnny a future right
to $116,334.49; and therefore, the reduced payout is a result of Johnny's failure to
"allow the account to subsidize." We again disagree. The divorce decree awarded
Johnny "the sum of $116,334,49 of the immediate lump sum benefit . . . ." The
divorce decree does not mention awarding a future right. Further, both parties
testified that Thelma was fully vested, thus making the entire balance available for
withdrawal at the time of the divorce. Johnny was awarded $116,334.49 at the date
of the divorce decree. The decreased pension benefits received from SBC flow from
an incorrectly drafted QDRO and not from Johnny's premature acceptance of
benefits.

 We hold that the trial court did not abuse its discretion and violate the
acceptance-of-benefits doctrine in rendering a judgment against Thelma.

 We overrule point of error two.


Cumulative Error

 In point of error six, Thelma argues that there was cumulative error. Having
found no error above, we overrule point of error six.

Conclusion

 We affirm the trial court's judgment.


 

 George C. Hanks, Jr.

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.


1. 

2.