Opinion issued November 19, 2009















     


In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00638-CV




TONY CANTU AND ELSA CANTU, Appellants

v.

WADE MCKINNEY, JR., REBECCA MCKINNEY, JUSTIN MCKINNEY,
DANIEL BROUSSARD, CRAIG DEHAAN, JONNIE HARKER, EPERNAY
HOMEOWNERS ASSOCIATION, Appellees




On Appeal from the 129th District Court 
Harris County, Texas
Trial Court Cause No. 2005–66307




MEMORANDUM OPINION 
          This appeal arises from a dispute between neighbors who live in a townhouse
complex. Pro se appellants, Tony Cantu and his wife, Elsa Cantu (“the Cantus”),
assert two issues on appeal. The Cantus challenge the agreed judgment signed by the
trial court on the ground that they did not consent to the judgment. The Cantus also
challenge the trial court’s order levying monetary sanctions against Tony Cantu. 
          We affirm. 
Background
          The Cantus, Wade McKinney, Jr., Rebecca McKinney, Justin McKinney, Craig
Dehaan, and Jonnie Harker all resided in a townhome complex. Daniel Broussard
was employed by the complex’s homeowners’ association, Epernay Homeowners
Association (“Epernay”). The Cantus sued their neighbors and Broussard, alleging
that they had committed various tortious acts against the Cantus, including acts of
vandalism, defamation, threats of physical harm, and verbal harassment. 
          Epernay intervened into the lawsuit. The Cantus counter-claimed for breach
of contract, alleging that Epernay failed to repair their residence. Ultimately, the trial
court realigned the parties. The Cantus became the defendants and the parties
initially sued by the Cantus became the plaintiffs. 
          The newly realigned plaintiffs identified John Maher as a potential witness in
the case. Maher was not a party to the suit. Maher resided in the townhouse complex
and is an attorney licensed to practice law in Texas. 
          In February 2007, Tony Cantu went to Tommy’s Seafood Steakhouse
Restaurant. Tommy Tollette, the owner of the restaurant, was Maher’s client. While
Cantu was at the restaurant, an altercation occurred between Cantu, Maher, and
Tollette.
          On February 28, 2007, the trial court signed an agreed order granting a
temporary injunction in the instant case. The trial court included Maher and
Tommy’s Seafood Steakhouse Restaurant in the order as non-parties. In the order,
the trial court enjoined Tony Cantu from “directly or indirectly, having any contact
or communication with Tommy’s Seafood Steakhouse Restaurant, its owners,
employees, and vendors, by personal means, electronically, telephonically, or by other
means.” The trial court also enjoined Cantu from “directly or indirectly, having any
contact or communication with Mr. John Maher, his family, personal property or real
property, by personal means, electronically, telephonically, or be any other means,
and from stalking or following John Maher or his family members and from stopping,
slowing down, and/or making gestures or comments to or toward John Maher or his
family while passing John Maher’s home.” In turn, the trial court ordered that Maher
was similarly enjoined from “stopping, slowing down, and/or making gestures or
comments to or toward Tony Cantu or his family while passing Tony Cantu’s home.”
          Shortly after the trial court signed the agreed temporary injunction, Tony Cantu
filed suit in Harris County Court at Law No. 1 against Maher, Tollette, and Tommy’s
Seafood Steakhouse. Without disclosing the February 28 agreed temporary
injunction to the sitting judge, Cantu obtained an ex parte temporary restraining order
against Maher, Tollette, and Tommy’s Seafood Steakhouse Restaurant from County
Court at Law No. 1.



          On April 13, 2007, following an evidentiary hearing, the trial court in this case
found that Tony Cantu’s act of obtaining the ex parte restraining order in County
Court at Law No. 1. violated the February 28 agreed temporary injunction and
invoked the trial court’s “inherent authority to ensure the orderly administration of
justice and to protect witnesses and persons with knowledge of relevant facts.” The
trial court found that “Dr. Cantu’s pro se filing of an ex parte TRO was an effort to
harass, intimidate and/or coerce a potential witness and person with relevant
knowledge in the cause pending before this Court.” The trial court further found, 
Given the Court’s expressed concerns about the actions that might
appear directed at intimidating or coercing witnesses, Dr. Cantu’s end-run around this Court’s authority and apparent lack of candor to [the
county court judge] demonstrate an intent to engage in precisely the
conduct intended to be forbidden by the February 28 Order. 
The court continued, “[T]his is conduct of a nature that invokes this Court’s inherent
authority in aid of its jurisdiction.” 
          In the April 13 sanctions order, the trial court sanctioned Cantu $3,000 to be
paid to Maher, ordered Cantu to notify the trial court of any new requests for
injunctive relief made in any Harris County court against any person connected with
this case, and prohibited Cantu from contacting any potential witness. 
          On April 25, 2007, the Cantus, the plaintiffs, and intervenor, Epernay, reached
a settlement. A rule 11 agreement containing the terms of the settlement was filed
with the trial court. The rule 11 agreement was signed by Tony Cantu and the
Cantu’s attorney, and the other parties. Elsa Cantu did not sign the agreement.
          Based on the rule 11 agreement, the trial court signed an “Agreed Permanent
Injunction and Order” (the “Agreed Judgment”) on April 30, 2007, incorporating the
terms and provisions of the settlement agreement. Among the provisions of the
judgment were the following:
Provided that Tony and Elsa Cantu sell [their townhouse] to a legitimate
third party buyer in an arms-length transaction (i.e., no sales to a Cantu
relative) within 260 days of the entry of this Agreed Permanent
Injunction Order, Plaintiffs and/or Epernay will pay the sum of
$80,000.00 to Tony and Elsa Cantu (such payment will be made within
72 hours of the closing of the sale of [the townhouse] to a legitimate
third party buyer). . . . 
The April 13 sanctions against Tony Cantu were not addressed in the Agreed
Judgment. 
          Tony Cantu filed a motion challenging the sanctions awarded against him. 
Following several evidentiary hearings, the trial court denied Cantu’s challenge to the
sanctions in an order dated May 9, 2007. The trial court made clear in the May 9
order that it found Tony Cantu’s evidence, offered to explain why he obtained the ex
parte TRO, not to be credible or to be absent. The May 9 order concluded that “[t]he
Court’s prior Order, issued April 13, 2007, remains in full force and effect.” 
          On May 24, 2007, the Cantus filed a motion “to set aside void non-mediated
settlement agreement” and for “reconsideration of sanctions.” The motion was in
substance a motion for new trial. The Cantus supported the motion with affidavits
signed by each of them. The Cantus asserted that the rule 11 settlement agreement 
was invalid because Elsa Cantu had not consented to or signed the settlement
agreement and that the Cantus’ attorney did not have authority to sign on her behalf. 
The Cantus further asserted that Tony Cantu signed the settlement agreement “under
extreme duress” and “under tremendous pressure.” Specifically, Tony Cantu alleged
that he did not fully understand the settlement agreement because he was suffering
from “prolonged sleep deprivation” and because he was not given adequate time to
review the document. The Cantus also complained that many of the settlement terms
relating to their use of and access to the townhome were “illegal” and
“unconstitutional” because they infringed on the Cantus’ property rights.
          In the May 24 motion, the Cantus also challenged the trial court’s April 13
sanctions order and the May 9 order in which the trial court ordered that the April 13
sanctions order “remains in full force and effect.” Essentially, the Cantus asserted
that trial court’s findings underlying the sanctions were not supported by the
evidence. 
          The Cantus sold their townhouse and closed on June 28, 2007. On that date,
Tony Cantu re-signed the settlement agreement and initialed each page. Although she
had not previously signed the document, Elsa also signed and initialed the settlement
agreement on June 28, 2007. 
          As required by the settlement agreement and by the Agreed Judgment, Epernay
tendered a check to the Cantus and their attorney for $80,000 following the closing
on the sale of the Cantus’ home. The Cantus and their attorney cashed the check. 
The Cantus also each signed a release thereby fully releasing the plaintiffs and
Epernay from all claims related to the suit. The settlement agreement and the Agreed
Judgment were expressly excepted from the release. 
          On July 23, 2007, the trial court signed an order denying the Cantus’ May 24
motion “to set aside void non-mediated settlement agreement” and for
“reconsideration of sanctions.” In the order, the trial court stated, 
This is, at minimum, the THIRD motion for rehearing/reconsideration
of the Court’s April 13, 2007 Order and/or May 9, 2007 Orders on these
same defendants’ prior motion for reconsideration of the April 13 Order. 
The Motion is hereby DENIED. The Court will entertain no further
motions upon the April 13 or May 9 Orders. This matter is final,
pending only Defendants’ compliance with the outstanding sanctions
orders, and the fulfillment of all conditions imposed by same.
(Emphasis in original.)
          This appeal followed. 
Challenge to the Agreed Judgment
          In their first issue, the Cantus challenge the Agreed Judgment. The Cantus
assert that they did not consent to the settlement agreement on which the Agreed
Judgment is based. They contend that, at the time the settlement agreement was
signed in April 2007, Tony Cantu was under duress due to lack of sleep and that they
did not have adequate time to review the settlement agreement. The Cantus assert
that they settled the case and agreed to the judgment “under false pretensions” and
“under the threat of coercion of threat [by the trial court] of striking their pleadings
due to ‘spoliation’ if settlement was not reached.”


 The Cantus also assert that their
trial counsel was “colluding” with opposing counsel.


 The Cantus further contend
that many terms of the Agreed Judgment, which limited their use of and access to
their property, were “unenforceable,” “illegal,” and “unconstitutional.” 
          It is undisputed that, pursuant to the Agreed Judgment, the Cantus sold their
townhouse, and that they, and their attorney, received and accepted $80,000 from
Epernay. The briefing indicates that the Cantus’ attorney received $10,000 of these
funds, with the remainder being accepted by the Cantus. 
          As intimated by appellees, a party cannot treat a judgment as both right and
wrong. See Carle v. Carle, 234 S.W.2d 1002, 1004 (Tex. 1951). Under the
acceptance of benefits doctrine, generally, a party who has voluntarily accepted the
benefits of a judgment may not thereafter prosecute an appeal from it.


 See Carle,
234 S.W.2d at 1004; see also Tex. State Bank v. Amaro, 87 S.W.3d 538, 544 (Tex.
2002); McCartney v. Mead, 541 S.W.2d 202, 205 (Tex. Civ. App.—Houston [1st
Dist.] 1976, no writ). 
          Similarly, when a judgment debtor voluntarily satisfies the judgment, the case
becomes moot and the debtor waives any right to appeal. See Marshall v. Hous. Auth.
of City of San Antonio, 198 S.W.3d 782, 787 (Tex. 2006); Riner v. Briargrove Park
Prop. Owners, Inc., 858 S.W.2d 370, 370 (Tex. 1993) (citing Highland Church of
Christ v. Powell, 640 S.W.2d 235, 236 (Tex. 1982)). This rule is intended to prevent
a party who voluntarily satisfies a judgment from later changing his or her mind and
appealing. See Highland Church of Christ, 640 S.W.2d at 236 (holding that parties
should not be allowed to mislead their opponent into believing that the controversy
is over and then contest payment and seek recovery). 
          To the extent that they felt that they had not given proper consent to the
settlement agreement or that certain terms were unenforceable, the Cantus should not
have accepted the funds under the judgment or satisfied their obligation by selling
their townhouse. That is, the Cantus cannot treat the Agreed Judgment as both right
and wrong. 
          We conclude that the Cantus may not now prosecute an appeal from the Agreed
Judgment because they voluntarily accepted the benefits under the Agreed Judgment
and voluntarily complied with their obligations thereunder. See Carle, 234 S.W.2d
at 1004; Marshall, 198 S.W.3d at 786–87. 
          We overrule the Cantus’ first issue.
Challenge to the Sanctions Order
          In their second issue, the Cantus challenge the trial court’s April 13, 2007
sanctions order and the subsequent orders reaffirming those sanctions (collectively
referred to as “the sanctions order”).


 
          The Cantus first challenge the sanctions order on the ground that attorney, John
Maher, to whom the trial court awarded the $3,000 sanctions, should have been
“disqualified” to act as an attorney in this case because he was identified as “an expert
witness” by the plaintiffs and was “illegally introducing motions” as “a third party
attorney.”


 Based on this argument, the Cantus allege that the sanctions order should
be “deemed invalid and void.” 
          When a lawyer is or may be a witness necessary to establish an essential fact,
Texas Disciplinary Rule of Professional Conduct 3.08 prohibits the lawyer from
acting as both an advocate and a witness in an adjudicatory proceeding. In re
Sanders, 153 S.W.3d 54, 56 (Tex. 2004). Mere allegations of unethical conduct or
evidence showing a remote possibility of a violation of the disciplinary rules will not
suffice to merit disqualification. Id. at 57. The fact that a lawyer serves as both an
advocate and a witness does not in itself compel disqualification. Id. 
Disqualification is only appropriate if the lawyer’s testimony is “necessary to
establish an essential fact.” Id. (citing Tex. Disciplinary R. Prof’l Conduct
3.08(a)). Consequently, the party requesting disqualification must demonstrate that
the opposing lawyer’s dual roles as attorney and witness will cause the party actual
prejudice. Id. 
          We begin by noting that the Cantus have not shown that they raised this
complaint in the trial court; thus, it is waived. See Tex. R. App. P. 33.1. In any event,
the Cantus have made no showing that Maher’s testimony was necessary to establish
an essential fact or that Maher’s alleged “dual roles as attorney and witness” caused
them actual prejudice. See Sanders, 153 S.W.3d at 57.
          The Cantus also challenge the sanctions order on the ground that the evidence
did not support the underlying bases of the sanctions. In its April 13 order, the trial
court cited Government Code section 21.001(a), which provides, “A court has all
powers necessary for the exercise of its jurisdiction and the enforcement of its lawful
orders, including authority to issue the writs and orders necessary or proper in aid of
its jurisdiction.” Tex. Gov’t Code Ann. § 21.001(a) (Vernon 2004). As described,
the April 13 sanctions order provides that the trial court sanctioned Tony Cantu for
violating the trial court’s February 28 agreed temporary injunction by obtaining an
ex parte TRO against Maher in another Harris County court. The trial court stated
that the sanction was necessary “to ensure the orderly administration of justice and
to protect witnesses and persons with relevant knowledge.” 
          Although the record is not entirely developed on this point, it appears that Tony
Cantu asked the trial court to reconsider the April 13 sanctions order on two grounds. 
Cantu alleged that he was not aware of the February 28 agreed temporary injunction
when he obtained the TRO in county court. He also asserted that the TRO was
necessary because Maher was harassing him and his family and that Maher had not
been truthful to the court when he alleged that Cantu had been harassing him. 
          The record reflects that the trial court heard evidence pertinent to Cantu’s
request to reconsider the sanctions at four separate hearings.


 The trial court denied
Cantu’s motion for reconsideration in its May 9, 2007 order, which provides that the
April 13 sanctions order remains “in full force and effect.” The May 9 order reflects
that, after considering the evidence admitted at the hearings, the trial court found
Tony Cantu’s testimony, evidence, and proffered reasons for obtaining the TRO not
credible or lacking in substance. The order reflects that the trial court found that
Cantu failed to show that the TRO was obtained for any other reason than to harass
or intimidate a potential witness in the case. 
          We review a trial court’s award of sanctions under an abuse of discretion
standard. See Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007). A trial court abuses
its discretion when it acts in an arbitrary or unreasonable manner without reference
to any guiding rules or principles. Cire v. Cummings, 134 S.W.3d 835, 838–39 (Tex.
2004). We examine the entire record, review the conflicting evidence in the light
most favorable to the court’s ruling, and draw all reasonable inferences in favor of the
court’s judgment. Herring v. Welborn, 27 S.W.3d 132, 143 (Tex. App.—San Antonio
2000, pet. denied). As fact finder, the trial court is entitled to evaluate the credibility
of the testimony and determine what weight to give it. Alpert v. Crain, Caton, &
James, P.C., 178 S.W.3d 398, 412 (Tex. App.—Houston [1st Dist.] 2005, pet.
denied).
          Here, the trial court, as fact finder, was entitled to disbelieve Tony Cantu’s
testimony that he was not aware of the February 28 agreed injunction or that he never
threatened or harassed Maher. The trial court was also entitled to disbelieve Tony
Cantu’s and Elsa Cantu’s testimony that Maher harassed and threatened the Cantu
family. The trial court was equally entitled to believe Maher’s testimony that Tony
Cantu had threatened and harassed him on many occasions. Other persons associated
with the townhome complex also offered testimony detailing Tony Cantu’s propensity
to engage in what can be characterized as harassing and threatening conduct. 
          We conclude that the Cantus have not shown that the trial court abused its
discretion by sanctioning Tony Cantu for violating the trial court’s February 28 order.
          We overrule the Cantus’ second issue.
Conclusion 
          We affirm the judgment of the trial court. We deny all pending motions.




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Jennings, Higley, and Sharp.