**Carrol THOMAS, Beaumont Independent School District, and Woodrow Reece, Appellants,**

v.

**BEAUMONT HERITAGE SOCIETY and Eddie Estilette, Appellees.**

No. 09–10–00155–CV.

Court of Appeals of Texas, Beaumont.

Submitted Jan. 27, 2011.

Decided May 5, 2011.

---

Melody G. Chappell, Nancy Y. Hart, Wells, Peyton, Greenberg & Hunt, L.L.P., Beaumont, TX, for Appellants.

Michael D. Getz, David Vann de Cordova, Jr., Jack Lawrence, Beaumont, TX, for Appellees.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

This is an appeal from the trial court's judgment that ordered appellant Beaumont Independent School District ("BISD") to refrain from directly or indirectly using funds from the school bond election of November 6, 2007, "for the demolition, tear-down, destruction, or dismantling" of South Park Middle School ("South Park") and awarded attorney's fees to appellees Beaumont Heritage Society ("Heritage") and Eddie Estilette. We affirm the trial court's judgment.

## PROCEDURAL BACKGROUND

Appellees Heritage and Estilette filed an application for temporary restraining order, temporary injunction, and permanent injunction against appellants BISD, Carrol Thomas, and Woodrow Reece.[1] Appellees sought to prevent the demolition of South Park. According to appellees, the BISD Board of Trustees "hand-picked" a Community Advisory Bond Committee ("CABC") "[t]o promote community consensus as well as to assist [the Board] in decisions about numerous projects[.]" Appellees contended that two Beaumont citizens became co-chairmen of the CABC and held various meetings to evaluate the needs of various BISD school buildings, and the possibility of demolishing South Park and building a new school arose.

According to appellees, "thousands of people voiced their objection, giving rise to a petition drive for the purpose of advising BISD that said petitioners did not want to see the school demolished[,]" and the petitions were presented to the BISD Board of Trustees. Appellees asserted that in re-

---

1. Appellee Heritage is a non-profit civic group that is dedicated to the preservation of historic buildings and landmarks, and appellee Estilette is a taxpayer in BISD and a signatory on a petition that objected to the demolition of South Park. Appellant Thomas is the superintendent of BISD, and appellant Reece is the president of the BISD Board of Trustees.

sponse to the objections to the possible demolition of South Park, a CABC member promised at various public forums that the South Park main building would not be torn down, and the Beaumont Chamber of Commerce disseminated a publication, with BISD's "full endorsement[,]" which promised that "old South Park" would not be demolished. Appellees maintained that the voters voted for passage of the bond based upon the promises of the BISD Board of Trustees, Thomas, and the CABC, but "once the bond passed, it became apparent that the BISD Board of Trustees and [Thomas] did not plan to keep their promise to not demolish the historic [South Park] building."

Appellees sought temporary and permanent injunctive relief, declaratory relief, and nominal and exemplary damages for alleged violations of their rights under article 1, section 27 of the Texas Constitution, breach of fiduciary responsibility to the taxpayers of BISD, violation of the Texas Open Meetings Act, and fraud upon the taxpayers of BISD. After conducting a temporary injunction hearing, the trial court signed an order that enjoined appellants from demolishing the South Park main building and ancillary buildings and scheduled the matter for trial on the merits on September 21, 2009. Appellants filed an accelerated interlocutory appeal of the temporary injunction order, and this Court affirmed the trial court's order. *Thomas v. Beaumont Heritage Soc'y*, 296 S.W.3d 350, 354 (Tex.App.-Beaumont 2009, no pet.); *see* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(4) (West 2008).

The case then proceeded to trial on the merits, during which the trial court took judicial notice of the testimony from the previous hearing.[2] At the conclusion of the trial, the trial court signed a judgment that did not enjoin BISD from demolishing the building, but did order BISD to "refrain from using any funds, directly or indirectly from the November 6, 2007, school board bond election, for the demolition, tear-down, destruction, or dismantling of ... South Park Middle School." Heritage and Estilette appealed, and BISD, Thomas, and Reece then filed a notice of appeal concerning the attorney's fees awarded in the judgment. *Beaumont Heritage Soc'y v. Thomas*, No. 09–10–00155–CV, 2010 WL 2171450, at *1 (Tex. App.-Beaumont May 27, 2010, no pet.) (mem. op.).

Heritage and Estilette subsequently moved to dismiss their appeal on the grounds that the proceeding had "become moot because the building that is the subject of the injunction has been destroyed." *Id.* The parties agree that BISD destroyed the building using nonbond funds rather than funds from the school bond election. Accordingly, this Court dismissed the appeal by Heritage and Estilette, but ordered that the appeal by appellants BISD, Thomas, and Reece concerning attorney's fees would continue. *Id.* The trial court filed findings of fact and conclusions of law, in which it concluded that appellants breached their fiduciary duty to the citizens of BISD, committed fraud, and violated the Open Meetings Act.

## ISSUE TWO

In their second issue, which we address first, appellants argue that the trial court erred by permanently enjoining them from using bond funds to demolish South Park. Specifically, appellants argue that the trial court lacked subject matter jurisdiction of the claims for violation of the Open Meet-

---

2. Because the trial court took judicial notice of the evidence from the temporary injunction hearing, we discuss the evidence as a whole rather than specifying whether the evidence was adduced at the temporary injunction hearing or the trial on the merits.

ings Act, violation of Article I, section 27 of the Texas Constitution, and that BISD, Thomas, and Reece were immune from suit for fraud on the voters and breach of fiduciary duty.

We turn first to appellants' contention that the trial court lacked subject matter jurisdiction of appellees' claims for violations of the Open Meetings Act and the Texas Constitution. *See* Tex. Gov't Code Ann. §§ 551.001–551.146 (West 2004 & Supp. 2010); Tex. Const. art. I, § 27. Appellants argue that because appellees failed to exhaust their administrative remedies prior to filing suit, the trial court lacked subject matter jurisdiction of these claims. In their brief, appellants cited to an outdated version of section 7.057 of the Education Code, as well as a case that relied upon that prior version. *See* Tex. Educ.Code Ann. § 7.057 (West Supp. 2010) (cited by appellants as "Vernon 2006"); *Harrison v. Neeley,* 229 S.W.3d 745, 746–47 (Tex.App.-San Antonio 2007, pet. denied). At oral argument, appellants conceded that their citation of section 7.057 and *Harrison* was erroneous and withdrew that argument; however, after oral argument, appellants filed a supplemental brief, in which they re-asserted their arguments concerning the exhaustion of remedies requirement, contending that the prior version of section 7.057 and *Harrison* governed because the prior version was still in effect when the alleged constitutional and Open Meetings Act violations occurred.

■ In 2009, the Legislature amended section 7.057 by adding subsection a–1, which provides as follows: "A person is not required to appeal to the commissioner before pursuing a remedy under a law outside of Title 1 or this title to which Title 1 or this title makes reference or with which Title 1 or this title requires compliance." Tex. Educ.Code Ann. § 7.057. Prior to the 2009 amendment, courts had interpreted section 7.057 to require a

plaintiff to exhaust administrative remedies. *Harrison,* 229 S.W.3d at 746–47 (holding that the 2006 version of section 7.057 required exhaustion of administrative remedies before seeking judicial review of a claim concerning a school district's alleged violation of the Open Meetings Act).

In construing a statute, we must "determine and give effect to the Legislature's intent." *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). In determining the Legislature's intent, we do not confine our review to isolated words, phrases, or clauses, "but rather we examine the entire act to glean its meaning." *Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 90 (Tex.2001); *see also* Tex. Gov't Code Ann. § 311.011(a) (West 2005) (instructing courts to construe words and phrases in context). "We look first to the statute's language to determine that intent, as we consider it 'a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent.'" *Leland v. Brandal,* 257 S.W.3d 204, 206 (Tex.2008) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex.1999)). "If the statute's language is unambiguous, its plain meaning will prevail." *Id.* The amended version of the statute became effective on June 19, 2009. Tex. Educ.Code Ann. § 7.057.

We presume that statutes are to be applied prospectively unless the Legislature expressly indicates otherwise. Tex. Gov't Code Ann. § 311.022 (West 2005). Therefore, we presume that the 2009 amendment to section 7.057 applies to suits filed on or after the effective date of the amendment. *See id.; In re M.W.S.H.,* No. 07–04–0559–CV, 2006 WL 223753, at *1 (Tex. App.-Amarillo 2006, no pet.) (mem. op.). Had the Legislature intended for the date on which a cause of action accrued to

determine whether exhaustion of remedies is required, it could have explicitly said so. *See, e.g.,* Tex. Civ. Prac. & Rem.Code Ann. § 150.002(f) historical note (West 2011) [Act of May 18, 2005, 79th Leg., R.S., ch. 208, sec. 4, 2005 Tex. Gen. Laws 369, 370] (making that statute applicable to "a cause of action that accrues on or after the effective date of this Act[.]"). Appellees filed their original petition on July 1, 2009. Appellants cite no authority supporting their contention that the date on which appellees' cause of action accrued rather than the date on which appellees filed suit, controls whether section 7.057(a–1) applies. Therefore, appellants' assertion that the trial court lacked subject matter jurisdiction of the claims because appellees failed to exhaust their administrative remedies is without merit.

 We turn now to appellants' argument that because appellants are immune from suit, the trial court lacked subject matter jurisdiction of appellees' claims for fraud on the voters and breach of fiduciary duty. Appellants argue that there is no waiver of governmental immunity for those claims. Governmental immunity generally protects governmental units of the State from suit. *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex.2003). Unless the State has consented to suit, a trial court lacks subject matter jurisdiction to consider a claim against a governmental unit. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 696 (Tex.2003).

 Appellants discuss the Texas Tort Claims Act and point out that the Act only waives governmental immunity for injuries arising from the use of motor vehicles or motor-driven equipment, injuries arising from condition or use of tangible personal property, and injuries arising from premises defects. Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (West 2011); *County of Cameron v. Brown,* 80 S.W.3d 549, 554 (Tex.2002). However, appellees sought and received injunctive relief that enjoined appellants from violating statutory and constitutional provisions.[3] As the Supreme Court has explained, "while governmental immunity generally bars suits for retrospective monetary relief, it does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions." *City of El Paso v. Heinrich,* 284 S.W.3d 366, 368–69 (Tex. 2009). Therefore, on this record, we conclude that the trial court had subject matter jurisdiction of the claims for fraud and breach of fiduciary duty. *See id.*

 Appellants also argue that Heritage and Estilette lacked standing, thereby depriving the trial court of subject matter jurisdiction. To invoke a district court's subject matter jurisdiction, a claimant must have standing. *Tex. Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 443–45 (Tex.1993). The Open Meetings Act provides that "[a]n interested person ... may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body." Tex. Gov't Code Ann. § 551.142(a) (West 2004). Taxpayers are entitled as "interested persons" to sue a school district and school officials to correct a violation of the Open Meetings Act. *See Salazar v. Gallardo,* 57 S.W.3d 629, 631, 636 (Tex.App.-Corpus Christi 2001, no pet.).

---

**3.** Although appellees sought injunctive relief as well as nominal and exemplary damages, and the trial court concluded that appellants had committed a fraud on the voters, breached their fiduciary duties, and violated the Open Meetings Act, the trial court's judgment did not award monetary damages for that conduct. Rather, the judgment merely enjoined appellants from using bond funds to demolish South Park and awarded attorney's fees and court costs to appellees.

However, the Open Meetings Act does not limit "interested persons" to taxpayers. *See* Tex. Gov't Code Ann. § 551.142(a).

"[A] school district board of trustees" is a "governmental body" under the Open Meetings Act. Tex. Gov't Code Ann. § 551.001(3)(E) (West Supp. 2010). In addition, a school board and staff may be subject to an injunction concerning the requirements of the Open Meetings Act. *Salazar*, 57 S.W.3d at 635 (citing *Hitt v. Mabry*, 687 S.W.2d 791, 795 (Tex.App.-San Antonio 1985, no writ)). Contrary to appellants' assertion in their brief, the record contains Estilette's affidavit, in which Estilette avers that he is a taxpayer in BISD and is part of "a loose-knit coalition favoring preservation of the South Park Middle School Main Building[.]" Furthermore, the record contains the affidavit of Darlene Chodzinski, the Executive Director of Heritage. In her affidavit, Chodzinski averred that Heritage "is a non-profit civic group, organized for educational and civic purposes, to preserve and assist in the preservation of historic buildings and landmarks." To have standing to sue on behalf of its members, an association must demonstrate that its members would otherwise have standing to sue in their own right; the interests the organization seeks to protect are germane to the association's purposes; and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Tex. Ass'n of Bus.*, 852 S.W.2d at 447. On this record, the trial court could have concluded that Estilette had standing as an interested person, and that Heritage met the requirements for associational standing. *See id.; see also* Tex. Gov't Code Ann. § 551.142(a); *Salazar*, 57 S.W.3d at 631, 636.

Having concluded that the trial court had subject matter jurisdiction, we turn to appellants final two "sub-issues" under issue two. In those sub-issues, appellants argue that the trial court erred in granting injunctive relief because BISD could not be bound by any representations that were made outside an official school board meeting, and the evidence of a fraud on the electorate was legally insufficient. "A litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom." *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950); *see also Tex. State Bank v. Amaro*, 87 S.W.3d 538, 544 (Tex.2002); *Trussway, Inc. v. Wetzel*, 928 S.W.2d 174, 177 (Tex.App.-Beaumont 1996, writ denied). This general rule is based upon estoppel. *Carle*, 234 S.W.2d at 1004. The narrow exceptions to the rule are (1) when acceptance of the benefits is because of financial duress or other economic circumstances, and (2) when reversal of the judgment on the grounds appealed cannot possibly affect an appellant's right to the benefits accepted under the judgment. *Amaro*, 87 S.W.3d at 544; *Waite v. Waite*, 150 S.W.3d 797, 803–04 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). The appellee bears the burden of proving that the appellant is estopped by the "acceptance of the benefits" doctrine. *Waite*, 150 S.W.3d at 803. If the doctrine applies, the appeal is rendered moot, and dismissal is the proper disposition. *Harlow Land Co., Ltd. v. City of Melissa*, 314 S.W.3d 713, 716 (Tex.App.-Dallas 2010, no pet.). However, subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel at any stage of a proceeding; therefore, the "acceptance of the benefits" doctrine does not estop an appellant from complaining of lack of subject matter jurisdiction. *Bloom v. Bloom*, 935 S.W.2d 942, 948 (Tex. App.-San Antonio 1996, no writ).

As previously discussed, the parties agree that after the trial court signed its judgment, which enjoined appellants

from using bond funds to demolish South Park, but did not enjoin the demolition of South Park, appellants proceeded to demolish South Park with non-bond funds, thereby rendering the appeal filed by Heritage and Estilette moot. *Beaumont Heritage Soc'y*, 2010 WL 2171450, at *1. Appellants' acceptance of the benefits of the judgment by demolishing South Park, thereby foreclosing appellees' ability to seek an appellate remedy to preserve South Park, does not fit within either of the exceptions set forth in *Amaro*, since appellants were not acting under financial duress, nor would appellants' rights to the benefits they accepted have been unaffected by a reversal of the judgment. *See Amaro*, 87 S.W.3d at 544. Accordingly, because appellants accepted the benefits of the judgment by demolishing South Park, as the judgment permitted them to do, appellants are estopped from raising appellate issues that are unrelated to subject matter jurisdiction. *See id.; Bloom*, 935 S.W.2d at 948. We overrule issue two.

### ISSUE ONE

In their first issue, appellants argue that the trial court abused its discretion in awarding attorney's fees to appellees. As sub-parts of issue one, appellants argue that the trial court lacked subject matter jurisdiction of appellees' claims for violation of the Open Meetings Act and violation of Article I, section 27 of the Texas Constitution. Appellants also contend that the trial court had no authority to award attorney's fees for the causes of action for fraud on the taxpayers, and breach of fiduciary duty. We have decided the subject matter jurisdiction issue adversely to appellants, and we will not revisit it here.

As for the sub-issue in which appellants argue that the trial court lacked authority to award attorney's fees for fraud and breach of fiduciary duty, we again note that appellants have accepted the benefit of the judgment and are there-

fore estopped from appealing issues that do not pertain to subject-matter jurisdiction. However, even if appellants were not estopped from raising the issue, we note that the trial court's judgment did not specify its basis for awarding attorney's fees. In their pleadings, appellees sought attorney's fees pursuant to the Declaratory Judgment Act and the Open Meetings Act, both of which provide that a successful litigant may recover attorney's fees. Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (West 2008); Tex. Gov't Code Ann. § 551.142(b) (West 2004). Appellants filed a response to appellees' motion to modify the judgment, in which they argued that because the trial court lacked subject matter jurisdiction, it could not award attorney's fees pursuant to the Open Meetings Act or the Declaratory Judgment Act. However, the record does not reflect that appellants objected to the failure to segregate the attorney's fees between the causes of action for which attorney's fees are recoverable and the causes of action for which attorney's fees are not recoverable. *See* Tex.R.App. P. 33.1(a); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex.2006). For all of these reasons, we overrule issue one and affirm the trial court's judgment. *See Bloom*, 935 S.W.2d at 948–49 (When appellate court addressed subject matter jurisdiction issue adversely to the appellant, who was estopped by the "acceptance of benefits" doctrine from raising other issues concerning the judgment, appellate court affirmed the trial court's judgment.).

AFFIRMED.