**Opinion issued April 9, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00377-CV
_____

**JAMESON THOTTAM, Appellant**

**V.**

**ELIZABETH JOSEPH, Appellee**

---

**On Appeal from the 311th District Court**
**Harris County, Texas**
**Trial Court Case No. 2007-75702**

---

## MEMORANDUM OPINION

Jameson Thottam appeals the amended final decree of divorce entered by the trial court on April 29, 2013, in his divorce from Elizabeth Joseph. In multiple issues and sub-issues, Jameson challenges the trial court's judgment with respect to

issues related to their child and to the division of the marital estate, as well as the award of attorney's fees to Elizabeth. We dismiss the appeal in part, and affirm in part.

## Background

Jameson and Elizabeth were married in July 2003. One child, A.T., was born of the marriage in January 2007. In December 2007, Jameson filed a petition for divorce and Elizabeth subsequently answered and filed a counter-petition.

Jameson and Elizabeth agreed to participate in mediation of the child-related issues with mediator, Jeffrey Uzick. On January 18, 2012, the parties signed a mediated settlement agreement (MSA) regarding the child-related issues. Thereafter, the trial court referred the remaining property-related issues to arbitration before arbitrator, Reginald Hirsch. Hirsch issued his arbitrator's award on November 23, 2012. Jameson subsequently filed a motion to vacate the arbitration award and an objection to the entry of the divorce decree. On January 14, 2013, Jameson's objection to entry of the decree was overruled by the associate judge. The trial court signed the final decree of divorce on January 15, 2013.

On February 13, 2013, Jameson filed a motion for new trial and a motion to modify, correct, and/or reform judgment, addressing the child-related issues only. On March 7, 2013, Jameson filed an amended motion to vacate the arbitrator's award. Following a hearing on March 28, 2013, the trial court denied Jameson's

motion for new trial and appeal of the associate judge's ruling, but granted Jameson's motion to correct, modify, and/or reform the judgment, ordering the parties to arbitration with Uzick over certain child-related provisions in the divorce decree.[1] On April 29, 2013, the trial court signed an amended final divorce decree, incorporating the MSA and arbitration award.

## Discussion

### A. Child-Related Issues

In his first and second issues, Jameson contends that the trial court abused its discretion in entering a final divorce decree that does not strictly comply with the terms of the parties' MSA regarding (1) the imposition of a geographical restriction and (2) Jameson's possession schedule. In two related but undesignated sub-issues, Jameson also argues that Uzick exceeded his authority by determining issues related to extended periods of possession and the amount of his child support.

### 1. Geographical Restriction

In his first issue, Jameson argues that the trial court abused its discretion by entering a final divorce decree that does not strictly comply with the terms of the MSA. Specifically, he contends that while the MSA includes a geographical restriction on both the domicile and residence of A.T., the omission of the word

---

[1] At the March 28 hearing, Jameson's counsel passed his amended motion to vacate the arbitrator's award.

"domicile" from the geographical restriction in the amended divorce decree "substantially changes the domicile restriction" by allowing Elizabeth "the opportunity to change the residence of the child from Maryland to Texas and back at her whim . . . ."

The MSA provides, in relevant part:

JOINT MANAGING CONSERVATOR: BOTH PARENTS

The Mother to have right to establish legal residence and domicile within a 100 mile radius in Annapolis, Md as a geographic restriction. This restriction will be lifted if the Father moves out of Harris and Contiguous Counties, TX to anywhere (with the exclusion of a 100 mile radius outside of Annapolis, MD in which case the restriction will not be lifted). Mother will be allowed to change residence and geographic restriction to Harris County Texas and move back to Houston, TX so long as Father lives in Harris and Contiguous Counties, TX.

The amended divorce decree provides, in relevant part:

IT IS ORDERED that Elizabeth Joseph, as a parent joint managing conservator, shall have the following rights and duty:

1. The exclusive right to designate the primary residence of the child within a one hundred (100) mile radius of Annapolis, Maryland. IT IS FURTHER ORDERED that this geographic restriction on the residence of [A.T.] shall be lifted if, at the time Elizabeth Joseph wishes to remove [A.T.] from a one hundred (100) mile radius of Annapolis, Maryland for the purpose of changing the primary residence of [A.T.], Jameson Thottam does not reside in Harris County, Texas or counties contiguous thereto, and Jameson Thottam does not reside within a one hundred (100) mile radius of Annapolis, Maryland.

IT IS FURTHER ORDERED that Elizabeth Joseph also has the exclusive right to change and to designate the primary residence of

4

the child to Harris County, Texas, so long as Jameson Thottam resides in Harris County, Texas, or counties contiguous thereto at the time of the designation.

A final judgment founded upon a mediated settlement agreement must be in strict compliance and literal compliance with the agreement. *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976). Modifications to settlement agreements are typically grounds for reversal, however, only where they add terms, significantly alter the original terms, or undermine the intent of the parties. *See Keim v. Anderson*, 943 S.W.2d 938, 946 (Tex. App.—El Paso 1997, no pet.) (finding reversible error where trial court added provision requiring husband to pay $3,500 of wife's attorney's fees); *In the Matter of the Marriage of Ames*, 860 S.W.2d 590, 592–93 (Tex. App.—Amarillo 1993, no writ) (holding trial court erred where it added terms which "differed significantly from the settlement agreement"). The determination of whether a final decree of divorce complies with the terms of a mediated settlement agreement is reviewed under an abuse of discretion standard. *Garcia-Udall v. Udall*, 141 S.W.3d 323 333 (Tex. App.—Dallas 2004, no pet.).

Here, the language of the MSA and amended divorce decree allow Elizabeth to change A.T.'s residence between two specified locations—that is, within a 100 mile radius of Annapolis, Maryland and Harris County and its contiguous counties. However, both the MSA and amended decree clearly condition that right upon the

5

location of Jameson's residence at the time of the contemplated change. We cannot discern how omission of the word "domicile" from the terms of the amended decree affects any change to Elizabeth's right to establish A.T.'s primary residence within the two identified geographical locations, nor does Jameson sufficiently articulate any such change. *See e.g., Yarbrough-Johnson v. Johnson*, No. 05-99-01432-CV, 2000 WL 199381, at *1 (Tex. App.—Dallas Feb. 22, 2000, no pet.) (not designated for publication) (noting no meaningful distinction between county domicile restriction and county residence restriction with regards to geographical restriction imposed under Family Code).

Further, we note that the Family Code addresses restriction upon the "primary residence of the child" but does not mention the child's primary "domicile." *See e.g.,* TEX. FAM. CODE ANN. § 153.132(1) (West 2014) (stating parent appointed sole managing conservator shall have right to designate "primary residence" of child); *id.* § 153.133(a)(1)(A)(B) (West 2014) (stating agreed parenting plan must designate conservator who has right to designate "primary residence"); *id.* § 153.134(b)(1) (West 2014) (providing order appointing joint managing conservator shall designate conservator who has exclusive right to designate "primary residence" of child); *id.* § 156.006(b) (West 2014) (limiting trial court's authority to temporarily modify designation of conservator who has exclusive right to establish "primary residence" if child in final order).

The omission of the term "domicile" from the provisions of the amended divorce decree does not significantly alter the original terms or undermine the parties' intent. Therefore, the trial court did not abuse its discretion when it did not include that term in the amended divorce decree. We overrule Jameson's first issue.

## 2. Period of Possession

In his second issue, Jameson contends that the trial court abused its discretion because the terms of the amended divorce decree do not comply with the terms of the MSA with regard to his summer periods of possession. Specifically, he argues that while the MSA granted him weekend periods of possession during the summer, the amended decree fails to do so.

The provisions of the MSA regarding access and possession designated Jameson's periods of possession with A.T. based on two criteria: whether A.T. had started kindergarten and whether Jameson lived more or less than 100 miles from her residence. The MSA provided that Jameson had a right to specific weekend periods of possession throughout the year, including the summer, until the child started kindergarten when Jameson resided more than 100 miles from A.T. The MSA further provided that, after A.T. began kindergarten, Jameson's specific weekend periods of possession would occur *during the school year* when Jameson resided more than 100 miles from the child.

7

Elizabeth does not dispute that, under the MSA, Jameson had a right to weekend periods of possession throughout the year, including summer, until A.T. began kindergarten and that those terms are not included in the amended divorce decree. However, she points out that when the MSA was signed on January 18, 2012, A.T. had just turned five years old and not yet begun kindergarten. The amended divorce decree was not signed until April 29, 2013, more than a year later and after A.T. would have ordinarily begun mandatory kindergarten attendance under Maryland law.[2] Consequently, the terms in the MSA governing possession of the child before she started kindergarten would have been rendered moot by the time the final divorce decree was signed. *See Heckman v. Williamson Co.*, 369 S.W.3d 137, 162 (Tex. 2012) (noting issue is moot when court's decision on merits cannot affect parties' rights or interests); *Coburn v. Moreland*, 433 S.W.3d 809, 827 (Tex. App.—Austin 2014, no pet.) (concluding appellant's issue regarding possession and access was moot on appeal where court's decision would no longer affect parties' rights or interests in matter).[3] Because we conclude that Jameson's

---

[2] Texas Rule of Evidence 202 provides a mechanism for courts to take judicial notice of another state's regulations and explicitly provides that judicial notice may be taken at any stage of the proceeding. *See* TEX. R. EVID. 202. We therefore take judicial notice of Code of Maryland Regulations 13A.08.01.01 and 13A.08.01.02-2.A.(1), which provide for mandatory kindergarten attendance for children five years of age and, under certain circumstances, a one-year deferral of the commencement of mandatory attendance.

[3] Further, even if A.T.'s kindergarten attendance had been deferred one year as permitted under Maryland law, she would have started kindergarten in the 2013–

8

issue regarding summer weekend periods of possession is moot, the trial court did not abuse its discretion in not including those terms from the MSA in the amended final divorce decree. Accordingly, we overrule Jameson's second issue.

### 3. Uzick Arbitration

In sub-issue one, Jameson argues that Uzick exceeded his authority by determining an issue related to expanded periods of possession. The MSA states that in the event of a disagreement arising over any detail in the divorce decree or a dispute regarding the drafting or interpretation of the MSA, the mediator acting as arbitrator shall resolve the issue, and that such issue shall be final and binding. Jameson argues that Uzick exceeded his authority under this provision because he made a fact determination that the extended periods of possession under Family Code section 153.317(a) were not in the best interest of the child.[4] However, Jameson failed to identify where in the voluminous record—here, nearly 5,000 pages—this alleged "best interest" finding was made. *See Maranatha Temple, Inc. v. Enterprise Prods. Co.*, 893 S.W.2d 92, 106 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding appellate court has no duty to undertake independent

---

14 school year at the latest, making the issue of possession periods prior to kindergarten moot.

4    Section 153.317(a) provides that a conservator may elect alternative beginning and ending possession times and that the court must grant the request unless it finds that the election is not in the best interest of the child. TEX. FAM. CODE ANN. § 153.317 (West 2014).

review of record and applicable law).  Further, a transcript of the Uzick arbitration is not in the appellate record. Where the pertinent evidence is not included in the appellate record, an appellate court must presume that the omitted evidence supports the trial court's judgment.  *See Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 550 (Tex. 2004).  Therefore, we presume that the arbitration proceeding supports the trial court's judgment.  *See id.*[5]

In his second sub-issue, Jameson complains that Uzick exceeded his authority under the arbitration provision of the MSA by making a determination regarding child support that is contrary to the provisions in the MSA.  The MSA provides, in relevant part, "Child Support—Guideline child support (currently at $1,500 per month).  Father to provide insurance on child.  Uninsured portions divided 50/50."  Jameson argues that because his income was significantly less at the time of the arbitration with Uzick, Uzick exceeded his authority in setting Jameson's child support obligation at $1,500.  Jameson has not provided any record references directing this Court to evidence supporting his claim that his income was significantly less at the time of the Uzick arbitration.  *See* TEX. R. APP. P. 38.1(i) (requiring brief to contain clear and concise argument for contentions

---

[5]     In her response to sub-issue one, Elizabeth states that she "can confirm that the *Amended* Decree does in fact award Jameson the right to begin and end his periods of possession with the child under the alternative times in accordance with" Family Code section 153.317(a).  Jameson does not address this contention in his reply brief.

made with appropriate citations to the authorities and to record); *Abdelnour v. Mid Nat'l Holdings, Inc.*, 190 S.W.3d 237, 241–42 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Further, as previously noted, there is no transcript of the Uzick arbitration proceeding in the record before us, and in the absence of any findings of fact or conclusions regarding this issue, we must presume that all facts necessary to support the judgment have been determined. *See Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). Accordingly, we overrule Jameson's first and second sub-issues.

## B. Property-Related Issues

In his third issue, Jameson contends that the trial court abused its discretion by excluding evidence offered by him in support of his separate property claims, causing the division of property to be manifestly unjust. In his fourth issue, Jameson argues that the trial court further erred by mischaracterizing specified real properties as Elizabeth's separate property. In sub-issues three through six, Jameson complains about (1) the sufficiency of the valuation evidence as it affects the overall property division, (2) the arbitrator's denial of Jameson's reimbursement claims related to Zeon Corporation,[6] (3) the arbitrator's valuation

---

[6] Zeon Corporation is an entity established by Elizabeth prior to marriage and through which she conducted her consulting business.

11

of one of the parties' real properties; and (4) the arbitrator's division of the community estate as grossly unjust and unsupported by the evidence.

In her brief, Elizabeth states that her arguments in response to the issues raised by Jameson regarding the division of the parties' marital estate are expressly made subject to her motion to dismiss which she filed simultaneously with her appellate brief. We consider the arguments in her motion to dismiss below.

## Motion to Dismiss

In her motion to dismiss, Elizabeth asserts that Jameson's issues on appeal related to the division of property should be dismissed because Jameson has accepted the benefits of the April 29, 2013 amended divorce decree and is, therefore, estopped from further challenging those aspects of the judgment.[7] Elizabeth also contends that Jameson is judicially estopped from pursuing the property-related issues in this appeal because the property claims resolved in the amended decree have been rendered in a final judgment between the same parties in a federal bankruptcy proceeding.

## "Acceptance of Benefits" Doctrine

### 1. Applicable Law

The acceptance of benefits doctrine is based on the principle that a party who accepts the benefits of a judgment is estopped from appealing that judgment.

---

[7] Elizabeth acknowledges that her motion to dismiss based upon the acceptance of benefits does not affect Jameson's issues concerning orders related to the child.

12

*Tex. State Bank v. Amaro*, 87 S.W.3d 538, 544 (Tex. 2002); *Waite v. Waite*, 150 S.W.3d 797 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). In *Carle v. Carle*, also a divorce case, the Texas Supreme Court stated that "[a] litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom." 234 S.W.2d 1002, 1004 (Tex. 1950). This doctrine often arises in divorce cases when one spouse accepts certain benefits of the judgment and then tries to appeal the remainder of the judgment. *See, e.g.*, *Waite*, 150 S.W.3d at 803; *Bloom v. Bloom*, 935 S.W.2d 942, 946–48 (Tex. App.—San Antonio 1996, no writ); *Blaylock v. Blaylock*, 603 S.W.2d 254, 255 (Tex. App.—Houston [14th Dist.] 1980, no writ).

When seeking to dismiss issues on appeal based on the acceptance of benefits doctrine, the burden is on the appellee to establish that an acceptance of benefits has occurred. *Leedy v. Leedy*, 399 S.W.3d 335, 339 (Tex. App.—Houston [14th Dist.] 2013, no pet.). This burden is satisfied if the relevant facts showing voluntary acceptance of benefits of the judgment are reflected in the record or developed through affidavits supporting the motion to dismiss. *See Rogers v. Rogers*, 806 S.W.2d 886, 889 (Tex. App.—Corpus Christi 1991, no writ). Once an appellee establishes an acceptance of benefits, the burden then shifts to the appellant to show either that the doctrine does not apply or that acceptance falls

13

within one of the established exceptions to the doctrine. *See Leedy*, 399 S.W.3d at 339.

One such exception is when the appellant's acceptance of the benefits is due to economic necessity, that is, when the acceptance of benefits is not voluntary because of financial duress or other economic circumstances. *See Gathe v. Gathe*, 376 S.W.3d 308, 313 (Tex. App.—Houston [14th Dist.] 2012, no pet.) Another exception applies when a reversal of the judgment could not possibly affect an appellant's right to the benefit accepted. *Amaro*, 87 S.W.3d at 544. Stated another way, when the appellant accepts only that part of the judgment that the appellee concedes is due to the appellant, the appellant is not estopped from appealing. *Waite*, 150 S.W.3d at 804. These exceptions are narrow. *Carle*, 234 S.W.2d at 1004.

When the acceptance of benefits doctrine applies and no exception is shown, an appeal is rendered moot. *See F.M.G.W. v. D.S.W.*, 402 S.W.3d 329, 332 (Tex. App.—El Paso 2013, no pet.) If a case becomes moot, the parties lose standing to maintain their claims depriving the appellate court of jurisdiction, and dismissal is appropriate. *See id.*

## 2. Relevant Facts

On February 9, 2012, the second day of the arbitration proceeding, Jameson filed a voluntary Chapter 7 bankruptcy petition.[8] All of Jameson's pre-petition assets, which subsequently became the subject of Jameson's issues in this appeal, were placed into the bankruptcy estate. Joseph Hill was appointed Chapter 7 trustee to administer Jameson's bankruptcy estate.

On April 29, 2013, during the course of Jameson's bankruptcy proceeding and with permission from the federal bankruptcy court, the trial court signed the amended final decree of divorce which divided the marital estate of Jameson and Elizabeth. In conjunction with the state court's final order dividing the parties' marital estate, the Chapter 7 trustee filed a motion seeking authorization to settle claims for and against the bankruptcy estate. Those claims which the trustee sought to address related to the division of property set out in the amended divorce decree. On September 17, 2013, the bankruptcy court signed a settlement order authorizing the trustee to enter into a settlement with a number of the bankruptcy estate's creditors, including Elizabeth.

On December 4, 2013, Jameson filed a notice of appeal in federal court from the bankruptcy court's settlement order which was subsequently dismissed on June 12, 2014. Consequently, the settlement order approving the division of the parties'

---

[8] The bankruptcy case is Cause No. 12-31139-H5-7 and was filed in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

15

marital estate, and which included the same property made the subject of this appeal, became final in the bankruptcy court. The bankruptcy settlement included, among other things, Elizabeth's agreement to transfer one of the assets awarded to her in the arbitration award—the real property located at 406 Branard Street—to the bankruptcy trustee. The bankruptcy trustee was thereafter authorized to sell this property as well as the other assets awarded to Jameson in the arbitration award so that the proceeds from the sale could be used to satisfy obligations owed to Jameson's creditors. These properties were sold and the proceeds used by the bankruptcy trustee to discharge Jameson's debts.

### 3. Analysis

Elizabeth contends that Jameson's pursuit of voluntary bankruptcy under Chapter 7, which resulted in the relinquishment, sale, and liquidation of marital property assets allocated to Jameson in the trial court's division of property in order to satisfy Jameson's obligation to his creditors, constitutes Jameson's voluntary acceptance of benefits of the judgment and precludes his pursuit of issues regarding that division in this appeal. In response, Jameson concedes that he accepted these benefits. However, he contends that the acceptance of benefits doctrine does not bar his appeal because (1) he accepted the benefits out of economic necessity and (2) a reversal of the judgment will not affect his rights to the benefits he has received. We address each of these arguments in turn.

16

### a. Economic Necessity

Jameson asserts that although he accepted the identified benefits arising from the division of the martial estate, he has provided ample evidence to demonstrate financial hardship. Jameson, however, fails to identify this evidence in his response or otherwise direct this Court to the portions of the voluminous record where this evidence may be found. It is Jameson's responsibility to direct this Court to the evidence upon which he relies to support his position. *See Saldana v. Garcia*, 285 S.W.2d 197, 201 (Tex. 1955) (holding appellate court has no duty to make independent search of statement of facts); *Miller v. Armogida*, 877 S.W.2d 361, 365 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding points of error waived if not briefed). This he has failed to do. *See Maranatha Temple, Inc.*, 893 S.W.2d at 106 (holding appellate court has no duty to undertake independent review of record and applicable law).

Jameson also disputes Elizabeth's position that Jameson's pursuit of bankruptcy under Chapter 7 was voluntary, and that he therefore voluntarily accepted the benefits that enabled the bankruptcy trustee to pay his obligations to creditors. Jameson argues that his "financial circumstances were so dire that he was forced to file for Chapter 7 bankruptcy." Aside from this conclusory statement, however, Jameson has failed to direct us to the evidence in the record

17

upon which he relies to support his argument. We therefore decline to consider it. *See Saldana*, 285 S.W.2d at 201; *Miller*, 877 S.W.2d at 365.

### b. Effect of Reversal of Judgment on Right to Benefits Accepted

Jameson also contends that the second exception applies because a reversal of the judgment could not possibly affect his right to the benefits accepted. This is so, he argues, because he would have filed for bankruptcy regardless of the pending divorce proceeding. Jameson's argument is misplaced. If Jameson's appeal of the property issues resulted in a reversal of the judgment, he could not be assured that the properties already sold to satisfy his creditors would be awarded to him in any re-division of the marital estate. If this case was remanded for re-division of the marital restate, the arbitrator could award the interest in these properties differently than before. *See Bloom*, 935 S.W.2d at 948 (holding that wife could not establish exception because she might receive more or less through re-division of property). Further, there is nothing to suggest that Elizabeth would concede those properties to Jameson if the judgment were reversed. *See Carle*, 234 S.W.2d at 1004 (noting party who accepts benefits that are undeniably his—so much so that opposing party would concede upon another trial that benefits are his—does not waive right to appeal). Moreover, as we previously noted, this exception to the acceptance of benefits doctrine is narrow, and it "does not tolerate chance or uncertainty." *Waite*, 150 S.W.3d at 807.

18

We conclude that Jameson has failed to carry his burden to show that the economic necessity exception applies, or that a reversal of the judgment would not affect his rights to the property. Because the acceptance of benefits doctrine applies and no exception is shown, Jameson's appeal of the property-related issues is moot. *See F.M.G.W.*, 402 S.W.3d at 332. We therefore grant Elizabeth's motion to dismiss and dismiss Jameson's third and fourth issues and related sub-issues three through six.[9]

## C. Attorney's Fees

In his fifth issue, Jameson challenges the trial court's order awarding attorney's fees against him in the amount of $10,000.

On April 23, 2013, Elizabeth filed a motion for attorney's fees and costs incurred in the preparation of responses to Jameson's motion for new trial, motion to vacate arbitrator's award, motion to modify, correct, and/or reform the judgment, and the appeal of the associate judge's ruling. On April 29, 2013, the trial court entered an order granting Elizabeth's motion and awarding her $10,000 in attorney's fees and costs.

Jameson argues that Elizabeth's motion failed to plead the grounds upon which she sought attorney's fees, and therefore, the trial court erred in granting her motion. Jameson's argument is unavailing. Texas Rule of Civil Procedure 90

---

[9] In light of our conclusion, we do not address Elizabeth's argument of judicial estoppel. *See* TEX. R. APP. P. 47.1.

states that "[e]very defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the trial judge in the trial court . . . before the judgment is signed, shall be deemed to have been waived by the party seeking reversal on such account . . . ." TEX. R. CIV. P. 90. When pleadings are not challenged by special exceptions, the court will construe them liberally in favor of the pleader. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). The record does not reflect that Jameson filed special exceptions or otherwise apprised the trial court of his complaint before the judgment was signed. Having failed to do so, Jameson waived any error. *See* TEX. R. CIV. P. 90. Additionally, the trial court's April 29, 2013 order reflects that a record of the hearing on Elizabeth's motion was made on April 25, 2013, yet the record was not included in the reporter's record on appeal. Without a record, we presume that the trial court made all findings necessary to support its order. *See Barrios*, 156 S.W.3d at 550 (noting where relevant evidence is not included in appellate record, appellate court must presume that omitted evidence supports trial court's judgment). We overrule Jameson's fifth issue.

## Conclusion

Because we conclude that Jameson accepted benefits under the final amended decree of divorce that he now challenges on appeal, and that he has failed

to demonstrate that an exception to the doctrine applies, we grant Elizabeth's motion to dismiss and dismiss the portion of the appeal related to the property division of the marital estate as moot. We affirm the remainder of the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.