# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00850-CV

**Appellants, 3CPL Holdings, LLC and Jennifer Nutt // Cross-Appellants, Trinity Constructors, Inc.; and Justin Blackburn**

**v.**

**Appellees, DFLC, Inc.; Trinity Constructors, Inc.; Jaguilin Duarte; Justin Blackburn; and David Buttross // Cross-Appellees, 3CPL Holdings, LLC and Jennifer Nutt**

### FROM THE 395TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 21-0092-C-395, THE HONORABLE RYAN D. LARSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal involves an acrimonious property dispute between neighboring landowners. After years of litigation, 3CPL Holdings, LLC and Jennifer Nutt (collectively, Nutt) and Trinity Constructors, Inc. and Justin Blackburn (collectively, Blackburn) agreed to settle their claims.[1] But the parties continued to disagree over certain specific terms, and Blackburn withdrew his consent to the parties' agreement. Nutt moved to enforce the agreement, which the trial court granted. In the final judgment based on the settlement agreement, Nutt was ordered to deed her property to Blackburn in exchange for his payment of $700,000. The property transaction closed several months after the final judgment contemplated it would, so Nutt moved for additional relief

---

[1] DFLC, Inc., Jaguilin Duarte, and David Buttross were also involved in the litigation and settlement but have not appeared in this appeal.

based on her post-judgment expenses, which the trial court denied. Both Nutt and Blackburn appealed, then Nutt moved to dismiss Blackburn's appeal.

We deny Nutt's motion to dismiss Blackburn's cross-appeal. In light of *White Knight Development, LLC v. Simmons*, No. 23-0868, 2025 WL 1668348, at *5 (Tex. June 13, 2025), we reverse and remand in part for the trial court to consider Nutt's request for equitable expenses due to Blackburn's delayed performance. We otherwise affirm the final judgment.

## BACKGROUND[2]

David Buttross is a local real-estate developer and the owner of DFLC, Inc. In 2018, DFLC purchased over 320 acres of undeveloped land in Williamson County and began to subdivide it into smaller tracts offered for sale. The only public road accessible to the land is State Highway 195, which is located on the north side of the property. The road's location and Texas Department of Transportation's regulations meant that some tracts would share an access easement to reach SH-195. However, between 2018 and early 2020, the tracts' exact boundaries were in flux because of ongoing surveying and negotiations regarding potential sales.

Nutt incorporated 3CPL Holdings to operate a storage facility for recreational vehicles and boats. In February 2020, Nutt contracted to purchase Tract 10B, which has frontage along SH-195, from DFLC, and the sale closed in June 2020. Meanwhile, Blackburn had agreed to buy Tract 7A, and Jaguilin Duarte had agreed to buy Tract 12B. Neither Tract 7A nor Tract 12B have SH-195 frontage; instead, they are "flag lots," or landlocked rectangular tracts with a sliver that connects to SH-195.

---

[2] We limit our discussion here to the relevant procedural history and undisputed factual background necessary to decide this appeal. *See* Tex. R. App. P. 47.1, .4.

Blackburn thought that Duarte was his only neighbor, as he claimed Buttross had not told him about Nutt's contract to buy Tract 10B. Before Blackburn knew about Nutt's pending purchase of Tract 10B, he and Duarte jointly built a road on the access easement between their properties and SH-195. After Blackburn and Nutt learned of each other's existence, they soon began arguing about their respective rights to the access easement. Nutt claimed she had rights granted to her by a joint-use access agreement with DFLC that Blackburn and Duarte were impeding, but Blackburn disputed the agreement's validity. Blackburn installed two livestock gates on the access easement, which restricted Nutt from her property and from using the full easement rights to which she claimed she was entitled. After other disagreements among Nutt, Blackburn, Duarte, DFLC, and Buttross arose, in January 2021, Nutt filed this lawsuit to, among other things, enforce the rights she believed that she was entitled to under the joint-use access agreement and seek damages.

In May 2023, the trial court granted Nutt's two motions for partial summary judgment and enforced the joint-use access agreement. However, Nutt maintained that Blackburn and people working on his behalf continued to deny her access to the easement. Nutt filed two other lawsuits as a result: one for trespass and nuisance against one of Blackburn's employees, and another for intentional infliction of emotional distress against Blackburn, in which Blackburn asserted third-party claims.

During a May 28, 2024 mediation, the parties agreed to settle all three lawsuits. Blackburn agreed to pay $700,000 to Nutt in exchange for her conveyance of Tract 10B and her easement interest under the joint-use access agreement within forty-five days. However, on July 12—the forty-fifth day after the parties' mediation—Blackburn's attorney proposed a new drafted agreement, which contained additional terms and did not dismiss the third-party claims in

3

the second ancillary lawsuit. Blackburn also attempted to pay by check held by his attorney's law firm, which Nutt declined to accept.

The property did not close on July 12, and Nutt moved to enforce the parties' settlement agreement. Blackburn revoked his consent to the agreement and opposed Nutt's motion to enforce. The trial court held an evidentiary hearing on the matter and entered final judgment enforcing the parties' settlement agreement. However, the parties still were unable to close on the property. Nutt timely filed a motion for new trial or to modify the judgment to account for additional expenses that she incurred and moved to appoint a receiver to enforce the judgment. The trial court denied Nutt's post-judgment motions but made clear that its denial of the receivership was contingent on Blackburn promptly closing on the property. The parties closed on Tract 10B on February 26, 2025.

Both Blackburn and Nutt appeal the final judgment. Blackburn challenges the trial court's (1) May 2023 order granting Nutt's two motions for partial summary judgment, (2) decision not to rule on his motion to exclude certain evidence regarding the same, and (3) final judgment enforcing the settlement agreement, despite (4) Blackburn's purported revocation of his consent to the agreement.

Nutt also appeals, but not as to the terms of the settlement agreement. Instead, she contends that the trial court erred by (1) denying her motion for new trial or to modify the judgment, in which she sought additional damages to compensate her for Blackburn's delay in closing on the property; (2) denying her request for attorney's fees incurred in enforcing the settlement agreement; and (3) assessing half of the closing costs to Nutt. And Nutt also argues, in an issue which we consider first, that the Court should dismiss Blackburn's cross-appeal under the

4

acceptance-of-benefits doctrine because Blackburn "made a voluntary payment of the final judgment."

## DISCUSSION

**A. The acceptance-of-benefits doctrine does not bar Blackburn's cross-appeal.**

Nutt contends, both as her fourth issue on appeal and in a motion to dismiss, that the Court should dismiss Blackburn's cross-appeal because he voluntarily satisfied the final judgment and thus cannot maintain a cross-appeal under the acceptance-of-benefits doctrine.

"The acceptance-of-benefits doctrine is a fact-dependent, estoppel-based doctrine that focuses on unfair prejudice to the opposing party." *Kramer v. Kastleman*, 508 S.W.3d 211, 232 (Tex. 2017). Under the acceptance-of-benefits doctrine, "a 'litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom.'" *Texas State Bank v. Amaro*, 87 S.W.3d 538, 544 (Tex. 2002) (quoting *Carle v. Carle*, 234 S.W.2d 1002, 1004 (Tex. 1950)). "Conceptually, the doctrine infers an agreement to terminate the litigation because the judgment has been voluntarily paid and accepted, or implies a waiver, release of errors, or admission that the decree is valid." *Kramer*, 508 S.W.3d at 218. "The doctrine's equitable objective of precluding an appeal when a litigant's actions are inconsistent with a claim of error furthers finality, preserves scarce judicial resources, and guards against gamesmanship." *Id.* The doctrine's basis "is 'to prevent a party who has freely decided to pay a judgment from changing his mind and seeking the court's aid in recovering the payment,'" as "a party should not be allowed to mislead his opponent into believing that the controversy is over and then contest the payment and seek recovery.'" *Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002) (quoting *Highland Church of Christ v. Powell*, 640 S.W.2d 235,

5

236 (Tex. 1982)). If the doctrine applies, the appeal is moot and must be dismissed. *Rowling v. Rowling*, 528 S.W.3d 116, 118 (Tex. App.—El Paso 2017, no pet.).

The party asserting that the doctrine applies bears the burden of proof and must prove all essential elements. *Kramer*, 508 S.W.3d at 217. If he does so, there are two "narrow exceptions" that allow an appellant to avoid the doctrine: when "(1) acceptance of the benefits is because of financial duress or other economic circumstances; or (2) the reversal of the judgment on the grounds appealed cannot possibly affect an appellant's right to the benefits accepted under the judgment." *F.M.G.W. v. D.S.W.*, 402 S.W.3d 329, 332 (Tex. App.—El Paso 2013, no pet.) (citing *Amaro*, 87 S.W.3d at 544). The appellant—the party resisting the doctrine's application—bears the burden of establishing the applicability of an exception. *Id.*

In Nutt's motion, she contends that Blackburn's cross-appeal should be dismissed based on the acceptance-of-benefits doctrine because Blackburn paid $700,000 in exchange for the deed to Tract 10B as required by the final judgment. Nutt maintains that the first exception does not apply because the settlement agreement provides that the parties signed "without duress," and evidence, including Blackburn's testimony, established that Trinity made over $40 million in annual revenue and had over $1 million in a bank account in June 2024. Nutt contends that instead of paying the judgment, Blackburn could have filed a supersedeas bond or cash deposit to suspend enforcement of the judgment.[3]

Blackburn maintains that Nutt is estopped from proving that the acceptance-of-benefits doctrine applies because she too has appealed the final judgment. In other words,

---

[3] At the hearing on the motion to appoint a receiver, Blackburn's counsel argued that because the final judgment involved an exchange—$700,000 for the deed to Tract 10B—an appropriate security would have involved a cash deposit into the court's registry in addition to "adequate protections" to the property's title, which he claimed that Nutt opposed.

6

Blackburn argues that Nutt cannot demonstrate her entitlement to invoke an equitable doctrine when she has engaged in the same conduct she seeks to stop.[4]

Blackburn also argues that the doctrine does not apply because his payment of the judgment was involuntary given Nutt's motion to appoint a receiver. Blackburn highlights his declaration attached to his opposition to Nutt's motion to appoint a receiver, in which he attests that a receivership "would not only significantly disrupt Trinity's internal everyday operations, but would also be sufficiently conspicuous" such that "the economic costs of the resulting damage to Trinity's business reputation . . . would far exceed the scope of the $700,000 [Nutt's] receiver would be authorized to recover." In the same declaration, Blackburn stated that because Nutt's motion to appoint a receiver "put our construction business at severe risk," including "the livelihoods of both our 35 employees, and the numerous subcontractors paid by Trinity to work on our projects," he "unwillingly abandoned our attempts to secure more explicit safeguards for carrying out the 'Cash for Deed' exchange, and instead performed on such on February 26, 2025." Blackburn points out that the trial court had indicated it would "determine the issue of appointing a receivership based on the compliance and non-compliance of the parties" in closing on Tract 10B, and it stated in an order that it found that Blackburn had "sufficient cash on hand to close without bank financing," such that "there is no reason to delay the closing based on financing." Finally, Blackburn points to the reporter's record from a January 2025 hearing, in which his

---

[4] Blackburn has not invoked the acceptance-of-benefits doctrine in an attempt to dismiss Nutt's appeal. Instead, he raises this argument only to prevent the application of the doctrine to his appeal. But in any event, the doctrine would not apply to Nutt's appeal because of the second exception—the benefit she accepted could not possibly be adversely affected by the matters she urges on appeal. Nutt's appeal raises issues secondary to the enforcement of the settlement agreement. *See F.M.G.W. v. D.S.W.*, 402 S.W.3d 329, 332 (Tex. App.—El Paso 2013, no pet.) (citing *Texas State Bank v. Amaro*, 87 S.W.3d 538, 544 (Tex. 2002)).

7

counsel stated any participation in fulfilling the final judgment would be "predicated on the fact and knowledge that we'd be continuing with our appeal."

We agree with Blackburn that the acceptance-of-benefits doctrine does not apply in this case to bar his cross-appeal. The Texas Supreme Court has clarified that "before denying a merits-based resolution to a dispute, courts must evaluate whether, by asserting dominion over assets awarded in the judgment under review, the appealing party clearly intended to acquiesce in the judgment; whether the assets have been so dissipated as to prevent their recovery if the judgment is reversed or modified; and whether the opposing party will be unfairly prejudiced." *Kramer*, 508 S.W.3d at 227; *see id.* at 228–29 (discussing other factors bearing on acquiescence and prejudice). Here, Nutt has not established any of those factors. As Blackburn points out, his counsel made clear that even though he would pay the $700,000 in exchange for Tract 10B, that decision was "predicated on the fact and knowledge that we'd be continuing with our appeal." That is, though Blackburn exchanged $700,000 for the Tract 10B deed, he did not "clearly intend[] to acquiesce in the judgment," but was instead attempting to avoid the receivership that the trial court had indicated would follow if Blackburn did not promptly close on the property. Further, there is no indication that "the assets have been so dissipated as to prevent their recovery if the judgment is reversed or modified," or that Nutt has been "unfairly prejudiced" by Blackburn's appeal. *See id.* at 227.

Thus, given this record and Nutt's arguments on appeal, Nutt has failed to meet the burden to establish that the acceptance-of-benefits doctrine applies, and we deny Nutt's motion to

dismiss Blackburn's cross-appeal.[5]  This conclusion is consistent with "the policy that 'an adjudication on the merits is preferred in Texas.'"  *Id.* at 227 (quoting *Sutherland v. Spencer*, 376 S.W.3d 752, 756 (Tex. 2012)).

### B.  We overrule Blackburn's issues on cross-appeal.

In Blackburn's cross-appeal, he urges that the trial court erred by (1) granting partial summary judgment in Nutt's favor based on the joint-use access easement, (2) refusing to rule on his motion to exclude evidence, (3) enforcing the settlement agreement in the final judgment, and (4) declining to recognize his revocation of the settlement agreement.

Blackburn's third and fourth issues relate to the final judgment enforcing the parties' settlement agreement, and because our resolution of these issues is dispositive on Blackburn's first and second issues, we consider those two issues together first.  Blackburn urges that the trial court erred by enforcing the parties' May 2024 settlement agreement because he revoked his consent to the agreement on July 19, 2024, and the agreement failed to define two terms—which claims were to be dismissed and how payment should be made—such that it was unenforceable as a Rule 11 agreement.  He also maintains that Nutt should have instead proved a

---

[5]  Though the parties frame this issue in terms of the acceptance-of-benefits doctrine, the result is the same under the voluntary-payment rule, another equitable doctrine that "represents the other side of the acceptance coin."  *Kramer v. Kastleman*, 508 S.W.3d 211, 227 (Tex. 2017).  "Under the modern view of the voluntary-payment rule, payment of a judgment does not bar prosecution of appeal unless the judgment debtor clearly misled the opposing party regarding the judgment debtor's intent to pursue an appeal."  *Id.* at 228; *see Miga v. Jensen*, 96 S.W.3d 207, 212 (Tex. 2002) ("[P]ayment on a judgment will not moot an appeal of that judgment if the judgment debtor clearly expresses an intent that he intends to exercise his right of appeal and appellate relief is not futile.").  To the extent that Nutt's argument is based on the voluntary-payment rule, we still deny her motion to dismiss Blackburn's cross-appeal given its similar equitable principles and the facts of this case, in which Blackburn consistently emphasized his intent to appeal the final judgment despite exchanging the $700,000 for the deed to Tract 10B to avoid a receivership.

breach-of-contract claim through a summary-judgment motion, and the trial court erred by granting her request on a motion to enforce.

"A settlement agreement must comply with Rule 11 to be enforceable." *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). Generally, that means it must be "in writing, signed and filed with the papers as part of the record" or "made in open court and entered of record." Tex. R. Civ. P. 11. Texas courts, including ours, have held that the essential terms for a settlement agreement are the amount of compensation and the liability to be released. *Chowning v. Boyer*, No. 03-20-00387-CV, 2021 WL 3233859, at *6 (Tex. App.—Austin July 30, 2021, no pet.) (mem. op.) (citing *Padilla*, 907 S.W.2d at 460–61 and collecting cases). "Parties may enter into a binding settlement agreement even if they contemplate that a more formal document memorializing the agreement will be executed at a later date." *Andrews v. Deutsche Bank Nat. Tr. Co.*, No. 03-11-00271-CV, 2012 WL 1581137, at *2 (Tex. App.—Austin May 3, 2012, no pet.) (mem. op.) (citing *Ronin v. Lerner*, 7 S.W.3d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, no pet.)).

"Although a court cannot render a valid *agreed* judgment absent consent at the time it is rendered, this does not preclude the court, after proper notice and hearing, from enforcing a settlement agreement complying with Rule 11 even though one side no longer consents to the settlement." *Padilla*, 907 S.W.2d at 461 (emphasis added). If a party withdraws its consent to a settlement agreement, the party seeking enforcement may pursue a separate claim for breach of contract or file a motion to enforce the Rule 11 agreement as a binding contract under general contract law, rather than as an agreed judgment. *See id.*; *Chowning*, 2021 WL 3233859, at *6 (citing *Mantas v. Fifth Ct. of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996)). "An action to enforce a settlement agreement, where consent is withdrawn, must be based on proper pleading and proof."

10

*Padilla*, 907 S.W.2d at 462; *see also Mantas*, 925 S.W.2d at 658 ("Where the settlement dispute arises while the trial court has jurisdiction over the underlying action, a claim to enforce the settlement agreement should, if possible, be asserted in that court under the original cause number."). If a motion to enforce gives the other party fair notice of the claim and relief sought, it "can be considered a sufficient pleading to raise a breach of contract claim in a settlement agreement case." *Kanan v. Plantation Homeowner's Ass'n*, 407 S.W.3d 320, 334 (Tex. App.— Corpus Christi–Edinburg 2013, no pet.) (citing *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009), and collecting cases).

We review the trial court's ruling on whether to enforce a Rule 11 agreement under the same rules governing contract construction. *See Crews v. Dkasi Corp.*, 469 S.W.3d 194, 199 (Tex. App.—Dallas 2015, pet. denied). And we review de novo the trial court's decision on whether evidence establishes that there are no disputed issues of material fact such that an enforceable settlement agreement exists as a matter of law. *See Padilla*, 907 S.W.2d at 462; *Chowning*, 2021 WL 3233859, at *6.

First, we conclude that Nutt's motion to enforce the settlement agreement is a sufficient pleading to raise a breach-of-contract claim in this case. *See Kanan*, 407 S.W.3d at 334. Nutt's motion sought to enforce the parties' mediated settlement agreement, stated that a later formalized agreement was unnecessary given the parties' agreement, asserted that the agreement contains all essential terms, and maintained that Blackburn breached the agreement. This was sufficient to give Blackburn "fair notice of the claim and relief sought." *See id.* Further, the parties submitted the issues of breach and enforcement of the agreement to the trial court with full briefing at an evidentiary hearing, at which admitted evidence included affidavits from both parties' attorneys, the unredacted settlement agreement, the draft settlement agreement Blackburn later

11

proposed, an email exchange between the parties and mediator regarding the post-mediation dispute, and Blackburn's check and proof of sufficient funds. *See id.* At no point in those proceedings did Blackburn object to the procedure or assert that he was entitled to additional proceedings to defend against enforcement. *See id.* at 334–35. To the contrary, Blackburn opposed the motion in briefing and at the hearing, as well as presented evidence in support of his argument that the settlement agreement was not enforceable. Thus, Nutt moved to enforce the parties' settlement agreement on "proper pleading and proof." *See Padilla*, 907 S.W.2d at 462.

Next, we conclude that the May 2024 mediated settlement agreement between Blackburn and Nutt meets the requirements of Rule 11. It was reduced to writing in a document titled "Agreement as to Mediated Settlement Terms" between 3CPL Holdings, LLC and Jennifer Nutt (defined as "Plaintiffs") and DFLC, Inc.; Trinity Constructors Inc., f/k/a Elusive Holdings, Inc.; Jaguilin Duarte; Justin Blackburn; and David Buttross II (defined as "Defendants"), signed by the parties or their attorney on their behalf, and filed with the trial court as an attachment to Nutt's motion to enforce. *See* Tex. R. Civ. P. 11; *Padilla*, 907 S.W.2d at 460.

As to the essential terms, the agreement states it "shall settle all disputes between the Plaintiff and Defendants" in their three suits pending in Williamson County, which the agreement lists by cause number, and defines the settlement payment and deed exchange terms in part as follows:

> 2. As settlement, Defendants, Trinity Constructors, Inc. and Justin Blackburn agree to pay damages to the Plaintiffs in the amount of $700,000.00, payable within forty-five (45) days into the IOLTA account at Blazier Christensen Browder & Virr P.C. ("BCBV"), in exchange for 3CPL Holdings, LLC executing a Special Warranty Deed to Trinity Constructors, Inc. conveying Tract 10B as described in the General Warranty from DFLC, Inc. to 3CPL Holdings, LLC dated June 8, 2020 and recorded . . . in Williamson County, Texas on June 10, 2020, as well as Plaintiffs' interest in any easement under the Joint Use Access Agreement.

12

. . .

4. Plaintiffs agree and represent there are no other encumbrances or liens on Tract 10B other than the Deed of Trust/Vendor's Lien with DFLC, Inc[.] and a second lien owed to Live Oak Bank. Plaintiffs and BCBV agree to disburse funds owed on all liens from BCBV's IOLTA account before funds are released to Plaintiffs. DFLC, Inc. will release its current lien on the property upon payment in full of Plaintiff's note owed to DFLC, Inc.[]

5. Each party to bear their own legal fees, court costs or closing costs of this settlement.

. . .

9. This term sheet is intended to be a binding agreement enforceable by TRCP Rule 11 and not by a separate lawsuit over breach of contract.

. . .

12. The parties agree to be bound by the determination of Mediator Jeff Rose regarding any disputes among the parties in adapting the terms of this general agreement as to Mediated Settlement Terms into the wording of the more extensive Full and Final Settlement Agreement and Release.

Because the agreement recited the terms of the settlement payments and deed transfer in exchange for the settlement of the parties' disputes, we conclude that it contained all "essential terms" to be enforceable. *See Padilla*, 907 S.W.2d at 460–61 (finding complete agreement where terms included agreement to pay in exchange for settlement); *see, e.g.*, *Chowning*, 2021 WL 3233859, at *6–7 (concluding agreement containing "the amount of compensation and the liability to be released" set forth essential terms for settlement agreement); *Scott v. American Home Mortg. Servicing, Inc.*, No. 03-14-00322-CV, 2015 WL 8593622, at *3 (Tex. App.—Austin Dec. 8, 2015, pet. denied) (mem. op.) (determining agreement that recited terms of settlement payments and modification of loan in exchange for release of liability contained all essential terms to be enforceable Rule 11 agreement). Though Blackburn maintains that the agreement did not define the specific method of payment, it prescribes a time—"within

13

forty-five (45) days"—and manner of acceptance—"into the IOLTA account at Blazier Christensen Browder & Virr P.C."—such that it is sufficient to constitute a material term in a binding agreement. *See Padilla*, 907 S.W.2d at 460 ("Where an offer prescribes the time and manner of acceptance, those terms must ordinarily be complied with to create a contract."). Thus, we hold that the mediated settlement agreement was an enforceable Rule 11 agreement containing all material terms, that Nutt's motion to enforce the settlement agreement was sufficient for the trial court to render judgment enforcing the agreement as a binding contract, and that the trial court did not err by entering final judgment accordingly despite Blackburn's withdrawal of consent. *See, e.g.*, *Kanan*, 407 S.W.3d at 334; *Ashmore v. Smith*, No. 03-03-00609-CV, 2004 WL 1171717, at *2 (Tex. App.—Austin May 27, 2004, pet. denied) (mem. op.); *cf. Bayway Servs., Inc. v. Ameri-Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (determining motion to enforce settlement agreement satisfied pleading requirement for breach-of-contract claim but reversing judgment enforcing appeal because trial court did not hear any evidence).

Blackburn's later attempt to have Nutt execute a settlement agreement that contained additional terms other than those listed in the Rule 11 agreement does not render the parties' agreement unenforceable for lack of essential and material terms; it instead reflects that those additional terms were either not essential to or exceeded the scope of the agreement. *See Scott*, 2015 WL 8593622, at *3 (citing *Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555–56 (Tex. 1972)). Likewise, though the settlement agreement included language noting that the parties planned to "adapt[] the terms of this general agreement" into a "more extensive Full and Final Settlement Agreement and Release," that language does not foreclose enforcement of the initial settlement agreement. *See id.* (citing *Murphy v. Seabarge, Ltd.*, 868 S.W.2d 929, 933 (Tex. App.—

14

Houston [14th Dist.] 1994, writ denied) ("Language contemplating additional written documentation is not conclusive on intent to contract.")); *cf. Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex. 1988) (concluding language that agreement was "*subject to* legal documentation" created fact issue regarding parties' intent to contract (emphasis added)).[6]

In sum, we agree with the trial court that the parties' May 2024 mediated settlement agreement is a binding agreement with all material terms such that Blackburn's revocation thereof was ineffective. *See Padilla*, 907 S.W.2d at 462; *see also Chowning*, 2021 WL 3233859, at *6 ("When the summary-judgment evidence establishes an enforceable settlement agreement as a matter of law, the trial court should grant the motion and enforce the agreement." (quoting *Padilla*, 907 S.W.2d at 462)). We overrule Blackburn's third and fourth issues.

Having concluded that the trial court correctly entered final judgment enforcing the parties' mediated settlement agreement, we do not reach Blackburn's first or second issues, which concern the trial court's May 2023 ruling on Nutt's motions for partial summary judgment and, given our disposition on the parties' settlement agreement, are now moot. The settlement

---

[6] Nutt also attached to her motion to enforce an email from the parties' mediator, who, after learning of the parties' continued dispute after mediation, stated "both sides explicitly said they wanted this binding MSA to serve as the final settlement agreement and that they did not want to have to deal with one another on wrangling another document." While we may look to extrinsic evidence to "aid the understanding of an unambiguous contract's language," it "cannot be used to augment, alter, or contradict the terms of an unambiguous contract," like the parties' settlement agreement here. *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 757–58 (Tex. 2018). To that end, we do not look to the mediator's email as evidence augmenting or contradicting the parties' settlement agreement but instead conclude that the settlement agreement is enforceable on its own terms, notwithstanding its language contemplating a "more extensive" agreement. *See Andrews v. Deutsche Bank Nat. Tr. Co.*, No. 03-11-00271-CV, 2012 WL 1581137, at *2 (Tex. App.—Austin May 3, 2012, no pet.) (mem. op.) ("Parties may enter into a binding settlement agreement even if they contemplate that a more formal document memorializing the agreement will be executed at a later date." (citing *Ronin v. Lerner*, 7 S.W.3d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, no pet.))).

15

agreement included an exchange of Nutt's "interest in any easement under the Joint Use Access Agreement," which was the subject of the partial summary-judgment order Blackburn challenges in his first two appellate issues. Because our jurisdiction is limited to live controversies, we lack jurisdiction to consider Blackburn's first two issues on appeal. *See Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012) ("[A] case is moot when the court's action on the merits cannot affect the parties' rights or interests.").

### C. We sustain and overrule Nutt's issues on appeal.

Nutt raises three issues on appeal, all challenging the trial court's actions after it entered final judgment enforcing the parties' settlement agreement.[7] She argues that the trial court (1) should have granted a new trial or modified the judgment to account for her losses based on Blackburn's delayed performance, (2) erred by declining her request for attorney's fees incurred in enforcing the settlement agreement, and (3) erred by assessing to her half of the closing costs.

In her first issue, Nutt asserts that she should be compensated for $24,387.34 in additional costs that she incurred from July 12, 2024, to February 26, 2025: the period between when Nutt moved to enforce the parties' settlement agreement—which was forty-five days after the parties signed the settlement agreement and when the settlement agreement originally contemplated closing would occur—and when the property closed. She moved for a new trial or to modify the judgment to account for these losses, which she bases on additional interest paid on the property's loan and the cost to renew her bee lease (which she maintains was necessary to maintain the property's agricultural exemption). Essentially, Nutt sought equitable relief to place

---

[7] In Nutt's fourth issue on appeal which we overruled above, she asked this Court to dismiss Blackburn's cross-appeal.

her in the same economic position that she would have been in had Blackburn timely closed on Tract 10B after the parties settled. We review a trial court's decision on a motion for new trial or to modify the judgment for an abuse of discretion. *See In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (per curiam) (motion for new trial); *Featherston v. Weller*, No. 03-05-00770-CV, 2009 WL 1896072, at *3 (Tex. App.—Austin July 3, 2009, no pet.) (mem. op.) (setting forth standard for motion to modify judgment and citing *Wagner v. Edlund*, 229 S.W.3d 870, 879 (Tex. App.—Dallas 2007, pet. denied)).

The Texas Supreme Court recently announced that "an equitable award of property-related expenses incurred due to the breaching party's delay in performing is recoverable alongside specific performance in limited circumstances." *White Knight Dev.*, 2025 WL 1668348, at *5.[8] When a party seeks specific performance for a breach of contract (as we have determined Nutt did in her motion to enforce the settlement agreement), "a court 'may order, in addition to specific performance, payment of expenses incurred by plaintiffs as a result of a defendant's late performance.'" *Id.* at *4 (quoting *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 575 (Tex. App.—Fort Worth 2008, pet. denied)). "A monetary award is a necessary supplement to remedy the breach by returning the parties to the positions they would have occupied had the contract been performed when performance was due." *Id.* at *6. However, each category of equitable expenses awarded must be "(1) directly traceable to the defendant's delay in performance, (2) foreseeable at the time of contracting, and (3) commercially reasonable." *Id.* at *7. And when the nonbreaching party is in possession of the land during the breaching party's

---

[8] *White Knight Development* was handed down after the parties completed their appellate briefing in this case, and thus the trial court did not have the benefit of its authority when making the decision challenged here.

17

delay, "any expense awarded must also be incurred in connection with the care and custody of the particular property in dispute." *Id.* However, "a trial court has broad discretion in 'balancing the equities' to fashion such a remedy." *Byram v. Scott*, No. 03-07-00741-CV, 2009 WL 1896076, at *5 (Tex. App.—Austin July 1, 2009, pet. denied) (mem. op.) (citing *Edwards v. Mid-Continent Off. Distribs., L.P.*, 252 S.W.3d 833, 836 (Tex. App.—Dallas 2008, pet. denied)); *accord White Knight Dev.*, 2025 WL 1668348, at *3 ("[T]he nature and contours of an equitable award are within trial court discretion." (quoting *Credit Suisse AG v. Claymore Holdings, LLC*, 610 S.W.3d 808, 819 (Tex. 2020))).

At the hearing on the motion to enforce, while devising the final judgment's language, the trial court stated that it would "remove the additional damages and attorneys' fees because that was not included in the MSA, but in the event that there is a failure to follow this judgment and this judgment needs to be enforced, then that may change at some later date." However, at a later hearing at which Nutt attempted to offer evidence in support of her request to modify the judgment, the trial court stated that its "concern is that [granting Nutt additional expenses] would add a material term that was not laid out in the MSA, and I'm not going to add material terms to a judgment that's based on an MSA." The trial court then denied Nutt's motion for new trial or to modify the judgment.

However, as discussed above, the trial court's final judgment was rendered not as an agreed judgment but as a result of Nutt establishing, on "pleading and proof," that the parties entered, and Blackburn breached, an enforceable settlement agreement. *See Padilla*, 907 S.W.2d at 462. In light of the rule that in some circumstances, a trial court may fashion an equitable award of expenses incurred as a result of a defendant's late performance, in addition to awarding specific performance, the trial court erred by declining to consider Nutt's request for the same on the basis

18

that it would "add material terms to a judgment that's based on an MSA." That is, like the *Paciwest* appellant, Nutt was effectively precluded from seeking and presenting evidence as to these types of damages to the trial court. *See* 266 S.W.3d at 575 (noting that trial court erred in refusing to consider damages attributable to appellant's delay in performing contract). On remand, the trial court can determine whether Nutt's requested delay expenses are "(1) directly traceable to the defendant's delay in performance, (2) foreseeable at the time of contracting, and (3) commercially reasonable." *See White Knight Dev.*, 2025 WL 1668348, at *7. We sustain Nutt's first issue.

Next, Nutt contends that the trial court should have awarded her attorney's fees for the efforts she undertook to enforce the parties' settlement agreement. Specifically, she sought $31,524.26 in attorney's fees that she claims were necessary to remedy Blackburn's breach of the parties' settlement agreement when he failed to close on the property within the forty-five-day period stated in the agreement.

Generally, we review a trial court's award of attorney's fees under an abuse-of-discretion standard. *See Ridge Oil Co. v. Guinn Invs., Inc.,* 148 S.W.3d 143, 163 (Tex. 2004). However, whether Texas law recognizes a particular basis for the recovery of attorney's fees is a question of law that we review de novo. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam) (noting that availability of statutory attorney's fees is legal question); *Heckman*, 369 S.W.3d at 150 (noting that appellate courts review legal questions de novo).

"Courts have long distinguished attorney's fees from damages." *In re Nalle Plastics Fam. Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013) (orig. proceeding) (citations omitted). "Texas law distinguishes between recovery of attorney's fees *as* actual damages and recovery of attorney's fees *incident to* recovery of other actual damages." *Haden v. David J. Sacks, P.C.*, 222 S.W.3d 580, 597 (Tex. App.—Houston [1st Dist.] 2007), *rev'd in part on other grounds,*

19

263 S.W.3d 919 (Tex. 2008) (per curiam). Attorney's fees are ordinarily not independently recoverable as actual damages. *Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 81–82 (Tex. 2003). And attorney's fees incident to other actual damages are ordinarily not recoverable unless they are authorized by contract or statute. *MBM Fin. Corp. v. The Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009) ("Texas has long followed the 'American Rule' prohibiting [attorney's] fee awards unless specifically provided by contract or statute." (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006))).

Texas Civil Practice and Remedies Code Section 38.001(8) provides for the recovery of attorney's fees in a breach-of-contract suit. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8). But this Court has concluded that attorney's fees under Chapter 38 may not be awarded to the prevailing party in a breach-of-contract action absent monetary recovery. *See Haubold v. Medical Carbon Rsch. Inst., LLC*, No. 03-11-00115-CV, 2014 WL 1018008, at *6 (Tex. App.—Austin Mar. 14, 2014, no pet.) (mem. op.) (concluding that specific performance in enforcing Rule 11 agreement was not recovery of actual damages and thus attorney's fees incurred in enforcing agreement were not recoverable); *see generally Boyaki v. John M. O'Quinn & Assocs.*, No. 01-12-00984-CV, 2014 WL 4855021, at *13–14 (Tex. App.—Houston [1st Dist.] Sept. 30, 2014, pet. denied) (mem. op.) (discussing split in intermediate appellate courts as to whether recovery of monetary damages is necessary to support attorney's fees claim under Chapter 38).

Here, the final judgment did not award any monetary compensation to Nutt; instead, it enforced the specific performance of the parties' settlement agreement. The parties' settlement agreement also did not provide an avenue for an attorney's fees award, as it specifically stated that each party was "to bear their own legal fees, court costs or closing costs of this settlement."

*Cf. Chowning*, 2021 WL 3233859, at *6 (affirming attorney's fees award because settlement agreement provided independent basis for award apart from Chapter 38). Thus, the trial court did not err in declining to award Nutt attorney's fees.[9] We overrule Nutt's second issue.

Finally, Nutt argues that the trial court should not have assessed $3,090.00 in closing costs to her. She argues that closing through a title company "was not a negotiated term in the settlement agreement" and maintains that the parties' settlement agreement contemplated her counsel's law firm serving as the escrow officer. Nutt insists that the title company's closing costs were not contemplated by the parties' original agreement.

However, unlike the caselaw that Nutt cites in support of her argument, the parties' settlement agreement specifically contemplated this result. *Cf. In re L.J.K.*, No. 04-20-00596-CV, 2022 WL 3907188, at *2 (Tex. App.—San Antonio Aug. 31, 2022, no pet.) (mem. op.) (reversing provisions in final order not contemplated by parties' written agreement). It includes a term that states: "Each party to bear their own legal fees, court costs or closing costs of this settlement." Thus, the trial court did not err in assessing "each party" their "closing costs." And to the extent that Nutt argues the closing costs were additional equitable expenses incurred by Blackburn's delayed performance, she is not precluded from making that argument on remand under the standard discussed above. *See White Knight Dev.*, 2025 WL 1668348, at *7. We overrule Nutt's third issue.

---

[9] This holding does not preclude Nutt from seeking attorney's fees on remand to the extent she is awarded equitable expenses incurred as a result of Blackburn's delay.

**CONCLUSION**

We affirm the trial court's final judgment enforcing the parties' settlement agreement. We reverse the trial court's denial of Nutt's motion to modify the judgment to the extent that she seeks equitable expenses incurred because of Blackburn's delayed performance. We remand for the trial court to consider whether Nutt is entitled to equitable expenses considering the standard set forth in *White Knight Development*. *See* 2025 WL 1668348, at *7.

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed in Part; Reversed and Remanded in Part

Filed:  August 26, 2025

22